[Filed June 7, 1888.]

# HIRAM BROWN ET AL., APPELLANTS, *v.* E. O. CORSON ET AL., RESPONDENTS.

CONGRESSIONAL GRANT TO AID IN THE CONSTRUCTION OF O. & C. R. R. LAND "PRE-EMPTED."—By the terms of the Act of Congress of July 25, 1886, granting lands to aid in the construction of the O. & C. Railroad, lands on odd sections within the twenty-mile limit which had been *pre-empted*, did not pass to the company by the terms of the grant, but were excepted out of such grant.

EVIDENCE—PRE-EMPTION.—A paper certified by the register of the land office to be a correct copy of the form of pages 160 and 161 of the register of declaratory statements on file in said office, and which is headed, "Register of declaratory statements under Act of Congress of September 4, 1841, and amendments thereto," and which contains a description of the land in question, etc., is not sufficient proof that the land described therein had been *pre-empted* at the time the railroad grant attached.

PRE-EMPTION—HOW ACQUIRED.—A pre-emption is a right derived wholly from statute, and a substantial compliance with the statute is necessary to its acquisition, which compliance must be shown by competent evidence.

SAME—WHAT EVIDENCE NECESSARY TO PROVE.—The evidence offered must show that the conditions existed which would enable the pre-emption, or to acquire the land under the law, and that he had performed at least enough to give him some inchoate right to the land.

COVENANT OF WARRANTY—BREACH—EVIDENCE.—In an action founded on a covenant of warranty in a deed where the grantee surrenders to another title without judicial process, he must prove the existence of such paramount outstanding hostile title, and that it was asserted.

APPEAL from Multnomah County.

*Stott, Waldo, Smith, Stott & Boise,* for Appellants.

*R. & E. B. Williams, Caples & Mulkey,* and *J. K. Kelly,* for Respondents.

STRAHAN, J.—The plaintiffs prosecute this action against the defendants to recover two thousand two hundred dollars and interest, as damages for the alleged breach of a covenant in a deed made by the defendants to plaintiffs. The deed containing the covenant declared on purports to convey to the plaintiffs the west half of the southwest quarter of section 5, T. 1 S., R. 3 E., in Multnomah County, for the expressed consideration of two thousand two hundred dollars. By the terms of the deed the defendants covenanted with the plaintiffs, "and their legal representatives forever, that said real estate is free from all

encumbrances, and that we will, and our heirs, executors, and administrators shall warrant and defend the same to the said Hiram Brown and C. H. Page, their heirs and assigns forever, against the lawful claims and demands of all persons whomsoever." The breach alleged in substance is that the defendants had not at the time of the execution of said deed, or ever at any time, a good and sufficient or any title to said real property, or any part thereof, and the plaintiffs have since been ousted and dispossessed of said property by a person having lawful right and title thereto. It is then alleged that at the time said deed was executed the United States owned said lands, and had a fee-simple title thereto; that in August or September, 1886, and prior to September 4, 1886, the said premises being then subject to pre-emption under the laws of the United States, one Karnstad being a person then entitled to take said land under the pre-emption laws, duly entered and settled upon the same under the said pre-emption law with the intention of taking the same as a pre-emption claim, and ousted and dispossessed the plaintiffs from said land, and ever since have and now do retain the possession of the whole thereof, and exclude the plaintiffs therefrom; that on September 4, 1886, said Karnstad duly filed with the register of the land office of the United States at Oregon City, Oregon, his written statement describing the said land, and declaring his intentions to claim the same under the pre-emption laws, having first made the oath required by law in that behalf upon the said register, and said Karnstad is now in the possession of the whole of said premises, rightfully and lawfully claiming the same under the said pre-emption laws. The amended answer denies the allegations of the complaint, except the execution of the deed.

As a separate defense the amended answer alleges in substance that the premises described in the deed were within the twenty-mile limit of the withdrawal of February 16, 1870, for the benefit of the Oregon and California Railroad Company, whose right to said land attached October 29, 1869, by virtue of the Act of Congress of July 25, 1866, and of a subsequent act of June 25, 1868; and that by virtue of said acts the said O. & C.

R. R. Co. became the owners of said land in fee-simple on the twenty-ninth day of March, 1870; that on the day last afore-said said O. & C. R. R. Co., for the consideration of five hundred dollars, sold said land to the defendant E. O. Corson and gave him a certificate of such sale, which certificate with said land the defendant sold and assigned to the plaintiffs for nine hundred and fifty dollars, and no more, and on the eighteenth day of April, 1882, said railroad company conveyed said premises to the plaintiffs by deed. It is also charged in the answer that Karnstad entered on said premises by the procurement of the plaintiffs for the purpose of enabling them to sue the defendants on the covenants in said deed, and that Karnstad is in the possession of said lands as the agent and servant of the plaintiffs. Considerable documentary evidence both from the local land office at Oregon City and the general land office was introduced. The plaintiffs to prove title out of the defendants when they made the deed, and to show that the O. & C. R. R. never acquired title to said lands by virtue of the grant made for its benefit of July 25, 1866, offered in evidence pages 160 and 161 of the register of declaratory statements on file in the land office at Oregon City.

The caption to this statement is as follows: "Register of declaratory statements under act of Congress of September 4, 1841, and amendments thereto." Opposite the number 650 and under the head of "name" is "Joseph Ross"; in the column headed "date of settlement" are the words "20 May, 1859"; in the column headed "when filed" are the words and figures "21 May, 1859"; in the column headed "part of section or legal subdivision" are the figures and letters, "W. $\frac{1}{2}$ of S. W. $\frac{1}{4}$, section 5, and E. $\frac{1}{2}$, S. E. $\frac{1}{4}$, section 6, 1 S., 3 E." It also appears from a letter written by the commissioner of the general land office, under date of June 17, 1880, to the register and receiver at Oregon City, that on April 23, 1877, the defendant E. O. Corson made application to enter a part of the land described, and made proof and payment and obtained certificate No. 1538. In this letter the commissioner says: "Under the present rulings of this office, said homestead entry having been made subsequent

to the date of the withdrawal of the land for railroad purposes, did not affect the status of the tract in question. Mr. Corson's application to enter the W. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of section 5 must be rejected, as the record shows that at the *time of the withdrawal* the tract was *public land."* After this ruling by the department that at the time of the withdrawal the land was public land, Corson purchased it of the railroad company.

The act of Congress under which the defendant Corson claimed to have derived title through the railroad company is the act approved July 25, 1866, entitled, "An act granting lands to aid in the construction of a railroad and telegraph line from the Central Pacific Railroad in California to Portland in Oregon." By the second section of the act it is provided "that there be and hereby is granted to the said companies, their successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line . . . . every alternate section of public lands, not mineral, designated by odd numbers to the amount of twenty alternate sections per mile (ten on each side) of said railroad line; and when any of said alternate sections or parts of sections shall be found to have been granted, sold, reserved, occupied by homestead settlers, *pre-empted,* or otherwise disposed of, other lands designated as aforesaid shall be selected by said companies in lieu thereof under the direction of the secretary of the interior, in alternate sections, designated by numbers as aforesaid, nearest to and not more than ten miles beyond the limits of said first-named alternate sections. . . . ." The main question at issue, therefore, seems to be, whether or not the land described in the deed was *public land* at the time the grant to the railroad took effect. On this question and in respect to this identical tract of land the commissioner of the general land office has decided both ways.

In Corson's contest with the railroad company, he decided it was *public land* where the railroad company attached, and in the contest of the *Railroad Company* v. *Karnstad,* it was held in effect that at the time the railroad grant took effect the same land was not *public land.* These decisions are in conflict and seem to be entirely irreconcilable. Nor is it necessary that we

should attempt to reconcile them. If the lands described "had been granted, sold, reserved, occupied by homestead settlers, *pre-empted,* or otherwise disposed of" prior to the time the company's rights attached under the grant, then such lands were excepted out of the grant, and the railroad never acquired any rights to them whatever. Without referring to the decisions of the land department to that effect, this principle seems to be clearly enunciated and decided in *Kansas Pacific Railway Company* v. *Dunmeyer,* 113 U. S. 629.

The only evidence offered that said lands had been *pre-empted* at the time the rights of the railroad company attached is the certified "copy of the form of pages 160 and 161 of the register of declaratory statements on file" in the Oregon City land office, which has already been referred to. It seems to me this paper does not tend to prove that the land described in the deed had been pre-empted. It contains none of the facts essential to be shown to entitle a settler to a pre-emption. The qualifications of a pre-emptor are prescribed by section 2259 of the Revised Statutes of the United States, and are briefly: He must be the head of a family, or widower, or single person over the age of twenty-one years, and a citizen of the United States, or he must have filed a declaration of intention to become such as required by the naturalization laws; he must make a settlement in person on the public lands subject to pre-emption, and inhabit and improve the same, and he must erect a dwelling thereon.

By section 2260 certain persons are rendered incapable of acquiring any right of pre-emption under the laws of the United States. These are: (1) Any person who is the proprietor of three hundred and twenty acres of land in any State or Territory; or (2) any person who quits or abandons his residence on his own land to reside on the public lands in the same State or Territory.

Section 2262 of the Revised Statutes provides: "Before any person claiming the benefit of this chapter is allowed to enter lands, he shall make oath before the receiver or register of the land district in which the land is situated, that he has never had the benefit of any right of pre-emption under section 2259; that he is not the owner of three hundred and twenty acres of land in any State

or Territory; that he has not settled upon and improved such land to sell the same on speculation, but in good faith to appropriate it to his own exclusive use; and that he has not directly or indirectly made any agreement or contract in any way or manner with any person whatsoever, by which the title which he might acquire from the goverument of the United States should inure in whole or in part to the benefit of any person except himself. . . . . And it shall be the duty of the officer administering such oath to file a certificate thereof in the public land office of such district, and to transmit a duplicate copy to the general land office, either of which shall be good and sufficient evidence that such oath was administered according to law."

The question, therefore, arises whether or not there was any evidence submitted upon which to base the instruction asked by the appellants. That instruction is as follows: "That said admission of the parties and said testimony, as a matter of law, establishes the fact that the said land was not embraced in the grant to the Oregon Central Railroad Company by said act of Congress, and that the O. & C. R. R. Co. acquired no interest in said land, and that the deed from the O. & C. R. R. Co. to plaintiffs passed no interest in said land to plaintiffs."

If the evidence offered proved that at the time the railroad grant took effect a valid pre-emption existed on said lands, then, clearly, the instruction asked should have been given. On the other hand, if such was not the effect of the evidence offered, the court did not err in refusing said instruction. As has been shown, the laws of the United States have fully and clearly defined who may take a pre-emption, who shall not, and the manner in which a right to the land shall be acquired. A pre-emption is a right derived wholly from the statute, and in order to acquire such right, a substantial compliance with the statute must be shown. In no other way could such right exist or be acquired. In other words, unless the statute granting pre-emptions to actual settlers on the public lands was substantially complied with by Ross, it cannot be said that the lands mentioned in the deed had been *pre-empted* at the time the railroad company's grant attached, and unless such lands had been so

*pre-empted* they were not taken out of the terms of the grant and passed to the company.

It is useless to' point out or enumerate the particulars in which the papers offered fail to show a compliance with the statute. They are entirely silent on each and every essential requisite. I do not think that an exact and technical compliance was necessary; but a substantial compliance, one that showed that the conditions existed which would enable the pre-emptor to acquire the land under the law, and that he had performed at least enough on his part to give him some inchoate right to the land. If the papers existed which showed a right in Ross they ought to have been produced, or if lost that fact could have been proven, and secondary evidence of their contents could have been offered. But nothing of this kind was done or attempted. All we have is the copy of the form of pages 160 and 161 of the "registry of declaratory statements on file." This I suppose to be a mere memorandum made by some clerk in the office, or by the register, of the fact that a declaratory statement had been filed. But why not produce the declaratory statement itself, or a copy of it.

It would surely be better evidence of the existence of this pre-emption claim than the memorandum offered. And for the like reasons, in the absence of record evidence of the existence of a valid pre-emption claim on the land described in the deed under the admissions contained in the record, the said land passed to the railroad company under their grant, and the court did not err in so declaring to the jury. The plaintiffs do not allege or claim that they were actually evicted or ousted by judicial process. Their contention is, that at the time the covenant sued on was made, there was a paramount title outstanding in the United States; that Karnstad had succeeded to that title, and that they have succeeded him. This, I think, under the authorities, they might do, if he had acquired a title better than plaintiffs' title, but they must by their proof negative the existence of title in the defendants when they made the covenant. In addition to this, they must show that such outstanding paramount title was asserted.

It is true when such title is in the United States as against one having no right, the laws of the United States may be a sufficient assertion of such hostile title; but I doubt it, where the title of the United States is attempted to be acquired by a pre-emptor, and that through and by the assistance of one of the covenantees in the deed. In this case, one of the plaintiffs testified that he paid the register and receiver's fees at the land office for Gunder Karnstad, and assisted him with money in the erection of a house upon said land, and that what he did in assisting Karnstad in taking said claim was wholly a matter of friendship to said Karnstad, and for no other purpose. This looks more like the plaintiffs rather invited and aided the assertion of said claim, than the unwilling and reluctant surrender to a *bona fide* outstanding superior title. But the view taken renders the consideration of this aspect of the case unnecessary.

The judgment must therefore be affirmed.

Lord, C. J., does not concur.

Petition for rehearing.

[Filed July 28, 1888.]

Thayer, C. J. — The main question involved in this case is whether the appellants proved a breach of the covenant of title alleged in their complaint in the action. The covenant is a general warranty of title against the lawful claims of all persons. I used to suppose that such a covenant would not be regarded as broken without the covenantee having been evicted from the granted premises by a paramount title; but by some kind of logic which I fail to appreciate, the courts have held that there need be no actual eviction shown, and that where the outstanding title is proved to be in the government, it will be sufficient without proof of a constructive eviction even. There was no ouster of the appellants proved in this case, beyond an attempt upon the part of Karnstad to pre-empt the land; and it might reasonably be inferred from the evidence that the appellants encouraged him to do that. The United States may never claim the land, and if a recovery can be had upon such proof, the

appellants could have kept the land, and also have claimed a return of the consideration money and interest. The covenant, so far as I can see, was as effectually broken when the deed was executed as it was at the time the action was commenced. That kind of doctrine tolerates injustice, especially in this case.

If the respondents had been notified that Karnstad was attempting to pre-empt the land, they would have had an opportunity to contest his right to do so, and probably been able to defeat him in his efforts in that direction. The register and receiver would not have been likely to have permitted his filing to stand under the circumstances, and in view of the rulings which they had already made in regard to the *status* of the title to the land. The respondent S. O. Corson endeavored to enter the land as a homestead, and the land department upon a contest instituted by the Oregon and California R. R. Co.. had decided that it belonged to the latter; thereupon said Corson purchased it from the company, and subsequently executed the deed to the appellants containing the covenant in question. Ross, who is alleged to have filed upon the land May 21, 1859, made no claim to it, and the company by assuming to convey it debarred itself from claiming lieu land in its stead.

In such a state of affairs, the land department, unless it is organized to make inconsistent rulings and to complicate titles, would have rejected Karnstad's filing and confirmed the appellants' ownership. I make these allusions not with a view of departing from established precedents, but by way of protests against such an invasion of the general rule upon the subject as will occasion injury. It might not be the wisest policy to require an eviction by legal process in all cases, though the maintenance of it to that extent would often prevent collusion. It may, perhaps, be safe enough to allow a recovery for the breach of such a covenant where the covenantee has given up the possession of the land to the claimant of the alleged paramount title, if the covenantee is required to establish by clear and unequivocal proof that such claimant was the absolute owner of it; but no such recovery should be permitted when the question is left in doubt. Hence, the appellants were not entitled to recover in the action

without establishing by proof that the land in question was pre-empted when the grant was made to the railroad company. Their counsel claim that they did prove that fact when they introduced in evidence the copy of the entry in the register's books in the land office at Oregon City, which is referred to in the opinion delivered herein. The majority of the court was of the opinion that a copy of such an entry was not competent evidence.

Said counsel in their petition for a rehearing concede that it may not have been the best evidence, but claim that it was introduced without objection, and was sufficient evidence of the fact, and they cite section 745 of the Code to show that entries made in public or other official books, etc., are primary evidence of the facts stated therein. That is the general rule as to entries in public books independently of the statute. Mere certified or office copies, however, from such books are not evidence, unless where the officer is authorized to give out or certify copies. (Part 2, n. 163, to p. 163, 3d ed., C. & H. notes to Phillips on Evidence.) But if we yield to counsel the full benefit of the proof which the entry furnishes, does it establish that Ross had pre-empted the land in question when the grant was made to the railroad company? Is such an entry evidence of any fact of which the officer has no personal knowledge, and is not required to determine from the statement contained in the entry? It seems to me not. It would doubtless under the rule referred to be evidence that Ross had filed a declaratory statement, to the effect that it was his intention to claim the tract of land as a pre-emption right. Under the act of Congress upon the subject, it would be proof that he had taken the preliminary step under the act, entitling him to purchase it in preference to others. The statement may have shown that Ross claimed to be a settler upon the land, and a qualified pre-emptor; but that would not prove such settlement or qualification, nor authorize the register to infer it. Those matters must be established when the final proof is made in the mode pointed out in the act.

Such a statement is no evidence upon which the register and receiver are authorized to issue the final papers, giving the

claimant a duplicate of the receiver's receipt for the money paid. It is a mere *caveat*, notifying the register not to allow any other party to enter the land as a pre-emption or homestead until the declarant is heard. If the register was to undertake to find from the statement that the declarant was a settler upon the land, that he was the head of a family, or was qualified in the other respects, it would be *extrajudicial*. How, then, could it be inferred from the entry that Ross had settled upon the land, and possessed the various qualifications referred to? This view was announced substantially in the former opinion; but appellants' counsel insist it is erroneous. They say that "the segregation or reservation is the *quasi* judicial act of the register of the local land office, based upon the application of any one who can satisfy the register in the manner required by law that he has the lawful qualifications, and has taken the step necessary to constitute him a settler. Under the law and rules of the department, the segregation or reservation does not take place until this evidence is furnished, then it is noted on the maps of public surveys, and recorded in the proper book of the local office where the land is situated. The land is then reserved, segregated, or otherwise appropriated. After that record is made no other filing or entry will be permitted, except after a contest instituted in the manner prescribed by the rules against the first claimant, service upon him, and a trial of his right." But I cannot believe that the mere filing of the declaratory statement furnished evidence sufficient to satisfy the register that Ross had the lawful qualification, and had taken the step necessary to constitute him a settler upon the land; nor does it appear that the land was noted upon the maps of the public survey, and a description of it recorded in the local land office, as counsel would seem to think would be inferred. I do not believe that said copy of the entry in the books of the office authorizes any such inference. If Ross had been shown to have been lawfully qualified to pre-empt the land, and to have settled upon and improve it as required by the act when the statement was filed, there might be some grounds for claiming that it was excepted out of the grant to the railroad company. But I think

it requires more proof to establish that it was "pre-empted" than the copy of the memorandum referred to.

The counsel appear to claim that because the entry in the book of the office of the register would prevent another person from taking steps to pre-empt the land, without instituting a proceeding to have Ross' filing canceled, therefore the grant to the railroad did not affect it. The grant and an attempt upon the part of another person to pre-empt the land after Ross had filed on it stand upon a different footing. Congress is invested with full power to dispose of the public lands, and it may do so irrespective of any attempt by a party to pre-empt, or enter them as a homestead, unless a right actually vested and existed in favor of such party when the grant was made.

The bare filing of a declaratory statement to pre-empt those lands, unless the declarant were shown to be a qualified pre-emptor, and to have complied with the law upon the subject, would not prevail against such a grant. In this case the grant to the railroad company included the land in question; but if it were found to have been granted, sold, reserved, occupied by a homestead settler, pre-empted, or otherwise disposed of, then other lands were to be selected by the company in lieu thereof. Was the land *shown* to have been *pre-empted* prior to the grant? This question must be kept in view in determining the case, and it turns entirely upon the meaning of the term "pre-empted" as used in the grant. Ross did not complete his title to the land. His filing is shown to have been declared abandoned August 18, 1870, but at what time it was abandoned does not appear. It seems to me that it cannot reasonably be claimed that he pre-empted the land, or that he did more than to *attempt* to pre-empt it.

The grant does not provide that, "when any of said alternate sections or parts of sections shall be found to have been *attempted* to be pre-empted, other lands . . . . shall be selected," etc., and unless an attempt *to pre-empt* and *pre-empted* are synonymous, the grant to the railroad company must prevail. I should be inclined to hold, however, that if Ross were shown to have possessed the requisite qualifications, and had complied with the

conditions of the act up to the time of the grant, although he
had not made his final proof and payment of the price of the
land, the railroad company would not be entitled to it.   But
those facts should be shown with as great particularity and
authenticity as is required in making final proof, in order to
obtain the patent.   The claimant's *ex parte* declaration to the
register, that he was legally qualified under the law, had com-
plied with its provisions, and intended to claim the tract of land
as a pre-emption right, would hardly be sufficient proof to
bring it within the exception contained in the grant, either in a
contest in the land department, or before the courts.

The petition for a rehearing should therefore be denied.

STRAHAN, J. — The plaintiffs have filed a petition for rehear-
ing, in which they seem to overlook the real question upon which
our previous decision rested.   The question contested arises
upon the refusal of the court below to instruct the jury, at the
plaintiff's request, that said admissions of the parties, and said
testimony as a matter of law, established the fact that the said
land was not embraced in the grant to the Oregon Central
R. R. Co. by said act of Congress, and that the O. & C. R. R.
Co. acquired no interest in said lands, and that said deed from
the O. & C. R. R. Co. to the plaintiffs passed no interest in
said land to plaintiffs.   The "admissions" referred to in this
instruction were made upon the trial, and were to the effect that
the O. & C. R. R. Co. succeeded to all the rights of the Oregon
Central R. R. Co. to the land grant provided for in the Act of
Congress of July, 1866, and that neither the said last-named
company nor the said E. O. Corson ever had any title or inter-
est in said property other than such as it, or he, acquired under
said act of Congress and the amendments thereto.

It was further admitted that prior to the execution of said
deed by defendants to plaintiffs, said E. O. Corson had pur-
chased from said O. & C. R. R. Co. whatever rights it had to
said land, and had received its certificate therefor.   That at the
time of the execution of said deed, said Corson assigned said
certificate to the plaintiffs, and subsequently the said railroad

company, in pursuance of said certificate, executed and delivered to the plaintiffs a deed of said land. It thus appears that the plaintiffs have an indefeasible title to said lands, unless the same is defeated by the papers referred to.

The court was required to declare that this testimony as a matter of law defeated that title. In refusing to do this we have held that the court did not err, and we adhere to that opinion. The papers offered had the effect claimed for them, or they did not. There is no room for any middle ground under the claim of secondary evidence. It must be remembered that the plaintiffs were bound to prove title out of the defendants at the time the defendants signed the deed, or fail in their suit. To do this it devolved upon them to prove that the land described was excepted out of the railroad grant in some one of the ways specified in the act. They attempted to do this by introducing this documentary evidence. To take it out of the grant, then, the land must have been *pre-empted.* How? By a compliance with the law granting a pre-emption by a qualified settler.

In no other way can such right be acquired or have any existence; and to prove such acquisition something more is required than the naked entry upon the register. If such entry were made by the officer in that book without the filing of the antecedent papers showing compliance with the law, it would be a mere nullity, and would confer no right on any one, nor would such an entry prejudice the United States or their grantees. In such case the land would not be *pre-empted* within the meaning of the statute, nor would any private right whatever have been acquired in the same. I fully concede that if it were shown that Ross filed the paper required by statute, he would have acquired an inchoate right to the land, and whether he acted in good faith or not the case would have been within the principle of the cases cited; but in the absence of any showing whatever on that subject, the court cannot declare, as a matter of law, that the entry in the book has all the force and effect of an actual settlement on the land, and the filing of the preliminary papers.

It is not perceived how section 745 of the Code aids the

plaintiffs. The difficulty is, that neither in this copy of the register, nor from any other document offered in evidence, is there a particle of evidence tending to prove several of the essential requisites of a valid pre-emption. Without such proof the plaintiffs failed to prove title out of the defendants when they made the deed in question. This failure could not be supplied by the instruction asked, which would have been its legal effect had it been given.

The rehearing must therefore be denied.