Argued May 6, decided June 30, 1908.

## PACIFIC LIVE STOCK CO. v. ISAACS.

96 Pac. 460.

TROVER AND CONVERSION—PROPERTY SEVERED FROM LAND—DISPUTED
    RIGHT TO POSSESSION—RIGHT TO MAINTAIN TROVER.

1. After recovering possession of land in ejectment against a disseisor, the owner may maintain trover against him for property severed from the freehold by the disseisor while holding adversely.

PUBLIC LANDS—DECISION OF SECRETARY OF INTERIOR—CONCLUSIVENESS
    —PLEADING—NECESSITY.

2. A decision of the Secretary of the Interior to be available as a defense of former adjudication, in an action involving the ownership of hay cut from land, the title to which is in the United States, must be pleaded.

JUDGMENT—RES JUDICATA—PLEADING.

3. A plea of former adjudication in an action involving ownership, such as trover or detinue, must aver that the question of title was actually decided in the former case, or was so involved that the judgment could not have been rendered without its determination.

EVIDENCE—DOCUMENTARY EVIDENCE—PRELIMINARY PROOF.

4. A decision of the Secretary of the Interior should not have been received in a subsequent action under a defense of former adjudication, where it was not accompanied by any competent proof that it was the original, nor of its genuineness, and it was not authenticated by certificate of the proper officer, that it was a copy.

PUBLIC LANDS—DECISION OF SECRETARY OF INTERIOR—CONCLUSIVE-
    NESS—EVIDENCE.

5. Where, in an action for the conversion of hay, involving the right to possession of land, the title to which is in the United States, plaintiff offered a decision of the Secretary of the Interior in a contest proceeding, under a

defense of former adjudication to defendant's plea, plaintiff was bound to show how the contest originated, what issues were submitted by the parties for decision, so as to enable the court to determine whether the decision offered is within its proper limits as to jurisdiction.

SAME.

6. The jurisdiction of the United States Land Department in a contest proceeding, having been to determine whether land attempted to be selected by plaintiff's predecessors in 1898 was vacant and open to settlement within Act June 4, 1897, c. 2, 30 Stat. 11-36 (U. S. Comp. St. 1901, p. 3768), and to determine the extent of a settler's asserted occupancy and possession, at and prior to that time, the Secretary of the Interior's decision in that proceeding does not affect an action involving the character of the settler's occupancy and right of possession asserted by him between 1900 and 1902.

APPEAL AND ERROR—CURE OF ERROR—ADMISSION OF EVIDENCE.

7. Error in admitting evidence was cured, where, though the court first denied the objecting party's motion to strike the evidence, at the time of instructing the jury, the court recurred to the motion and sustained it, and instructed the jury not to consider the evidence.

TROVER AND CONVERSION—EVIDENCE.

8. In an action for the conversion of hay, involving rights to lands, deeds from a particular person to plaintiff did not establish plaintiff's rights, where it was not shown that such person was ever in possession of the land, or had acquired any legal or equitable title that would entitle him to possession.

PUBLIC LANDS—EXCHANGE—RIGHTS.

9. Under Act Cong. June 4, 1897, c. 2, 30 Stat. 11-36 (U. S. Comp. St. 1901, p. 3768), authorizing one owning land in forest reserves, to relinquish it and select in lieu thereof land open to settlement, such owners acquire no legal or equitable title in the land to be received in exchange until the final consummation of the exchange.

SAME—CORPORATIONS.

10. A corporation could not lawfully become a settler upon public land, and hence its occupancy and inclosure thereof, at least before its predecessor's selection of land in exchange for land in a forest reserve, under Act Cong. June 4, 1897, c. 2, 30 Stat. 11-36 (U. S. Comp. St. 1901, p. 3768), was in violation of Act February 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524), an act to prevent unlawful occupancy of public lands.

SAME—RIGHT TO UNAPPROPRIATED LAND.

11. Every competent locator has the right to initiate a lawful claim to unappropriated public land by a peaceable, adverse entry upon it, while it is in the possession of those who have no superior right to acquire the title or to hold the possession.

TRESPASS—POSSESSION OR RIGHT OF POSSESSION OF PLAINTIFF—OWNER'S RIGHTS AFTER RE-ENTRY.

12. When an owner of land has been disseised and has recovered possession by re-entry, by a legal fiction, called "relation," he is regarded as having been continuously invested with the freehold and possession, which before re-entry was in the disseisor, and after such re-entry he may maintain trespass quare clausum against the disseisor, and laying it with a continuando may recover therein, besides his rents and profits, all the intermediate damage to the premises done between the disseisin and re-entry.

PUBLIC LANDS—CROPS—RIGHTS OF PURCHASER.

13. It having been determined in an equity suit that plaintiff was not entitled to possession of land, the title to which is in the United States, as against

a settler, and the commissioner of the United States land office having rejected plaintiff's predecessors' selection of the land in exchange for land in a forest reserve, holding that the settler was entitled to make a homestead entry thereon, defendants could rely on the settler's right to sell hay cut by him on the land, and the right to cut other hay and depasture the land, as against plaintiff.

TROVER AND CONVERSION—TITLE OF PLAINTIFF.

14. To entitle plaintiff to recover from defendants for hay purchased from another and cut from land claimed by plaintiff, the title to which was in the United States, it was necessary for plaintiff to show that, when defendant purchased the hay, plaintiff had possession, or the right of immediate possession of the land.

From Malheur: GEORGE E. DAVIS, Judge.

Statement by MR. COMMISSIONER SLATER.

This is an action in conversion for the value of a quantity of hay, of which, it is alleged, plaintiff was the owner, possessed, and entitled to the immediate possession at the time defendants took and converted it to their own use in the fall of 1901, and the winter and spring following. It was cut and stacked on premises claimed by plaintiff, as belonging to it, commonly known as the Rhinehart Springs Place, situate in Malheur County, a description of which by legal subdivision is fully set forth in the complaint. The action also involves the value of some pasturage on the same place, which, it is alleged, was consumed by defendant's stock.

The complaint contains the usual allegations, which are denied by the answer, but in addition there is an affirmative defense, to the effect that at the time of the alleged conversion, and between the spring of 1900 and the winter of 1902 one James Gentry, under a claim of right, was in the adverse, continuous and exclusive possession of the lands on which the hay mentioned in the complaint was grown; that Gentry claimed and declared that he was the owner, and rightfully and lawfully in the possession thereof, and had good right to sell and dispose of the hay growing and raised thereon; that defendants in good faith, believing that he was the owner and lawfully in possession, purchased from

Gentry, for a valuable consideration, the right to cut and harvest the crop of 1901, and in pursuance thereof they expended large sums of money in properly irrigating, caring for and harvesting the crop. The reply, after denying the new matter of the answer, avers that defendants did the things alleged by them with full knowledge at the time that plaintiff was seised and possessed of the premises described in the answer, and on which the hay was grown, and that the hay was their property; that Gentry was not the owner thereof, and had no right or authority to sell or dispose of it.

A trial was had before a jury, resulting in a verdict and judgment for plaintiff, from which defendants appeal, assigning as errors the overruling of their motion for a nonsuit, improper admission of evidence over their objection, and erroneous instructions.    REVERSED.

For appellant there was a brief over the names of *Mr. Albert N. Soliss* and *Mr. John C. Rice,* with an oral argument by *Mr. Rice.*

For respondent there was a brief and an oral argument by *Mr. John L. Rand.*

Opinion by MR. COMMISSIONER SLATER.

1. The legal title to the land on which the hay was harvested, was and is in the United States. Plaintiff, however, seeks to recover by establishing a possession and right of possession of the land under a claim of preferred right to purchase from the United States, as the assignee of one F. A. Hyde, at the time the hay was cut and harvested, and that defendants and James Gentry, under whom they claim, were trespassers thereon; while the defense is, that Gentry was in the actual possession of the land holding adversely to plaintiff, in good faith, under a claim and color of title. "It is recognized as a general rule that where the title to property which has become personalty by reason of its sev-

erance from the soil or freehold, as in case of timber
felled, ore mined, stone quarried, etc., depends upon the
ownership of the real estate from which it was sev-
ered, the owner of the real estate, if out of possession,
cannot maintain trover for such property where the
severance was made by a person holding adversely to
such owner and in good faith under claim and color of
title, since such an action, if permitted, would result in
a determination of the title to real estate between con-
flicting claimants in a transitory action.    The remedy
of the true owner in such a case is by ejectment to
recover possession and trespass for *mesne* profits":
28 Am. & Eng. Enc. Law (2 ed.), 670.    But after recov-
ery of possession in ejectment, the true owner may main-
tain trover for property severed from the freehold by
the disseisor while holding adversely: 28 Am. & Eng.
Enc. Law (2d ed.), 671.

2. It was shown that plaintiff, by and through its
agents and servants, of whom Gentry for a time was
one, was in the possession of the land from 1894 until
about March, 1900, during which time it had inclosed
the same with a fence, aided by natural obstructions or
barriers, had erected thereon a dwelling house, barn and
stock sheds, and had seeded 40 to 50 acres thereof to
alfalfa, from which it was accustomed annually to cut
hay for the feeding of stock.    To aid its possession, thus
shown, by adding thereto a right of possession, plaintiff
offered in evidence an opinion rendered by the Secretary
of the Interior, under date of October 27, 1902, and the
same was received in evidence over the defendant's ob-
jections.    By recitals therein, and not otherwise, it ap-
pears to have been the result of a contest initiated by
James Gentry, under whom defendants claim, against
the allowance of certain selections filed by one F. A.
Hyde, under the act of Congress of June 4, 1897, c. 2,
30 Stat. 11, 36 (U. S. Comp. St. 1901, p. 3768), for cer-

tain unsurveyed lands. One of these selections was made on April 15, 1898, and two others on October 5, 1898, altogether covering the lands occupied by plaintiff; that the selections were filed at the instance and for the benefit of the plaintiff, to whom Hyde conveyed; that the approved plat of the Government survey thereof, made in 1898, was filed in the local land office March 26, 1900; that in July, 1899, Gentry was put off the lands, under an order of court made in a suit in equity brought by the company in June of that year to enjoin and restrain him· from interfering with its possession; that he remained away until about March, 1900, when he returned and took possession, the suit having been dismissed by decree of the court in which it was brought, and, on appeal to this court, that decree having been affirmed in June, 1900 (*Pacific Livestock Co.* v. *Gentry*, 38 Or. 275: 61 Pac. 422, 65 Pac. 597) ; that on May 15, 1900, Gentry applied to make a homestead entry for the lands described in the answer herein, but his application was rejected by the local land office, because the prior selection of Hyde embraced the lands applied for by him, excepting one 40-acre tract; that on June 8, 1900, Gentry filed protest against Hyde's selections, to the extent of lands applied for by him, wherein he alleges, in substance and effect, that on or about October 31, 1894, he settled upon the lands in controversy with the view to claim the same under the homestead laws, and with the intention to make homestead entry thereof when surveyed; that he erected a dwelling house on the lands, and ever since the date of his settlement has been continuously in the possession thereof, residing thereon when the selections by Hyde were filed; and that, after the lands were surveyed, he applied to make a homestead entry thereof, but that his application was rejected for conflict with said selections; that a hearing was had on the protest in August, 1900, at which both Gentry and plaintiff

herein, as successor in interest to Hyde, appeared and submitted testimony; that the local officers disagreed in their opinions on the evidence; the receiver, finding in favor of Gentry, recommended the rejection of Hyde's selections to the extent of the conflicts with Gentry's claim; the register finding in favor of the company, recommended that the selections be allowed to stand; that on December 16, 1901, the Commissioner of the General Land Office affirmed the decision of the receiver, rejected the selections as to all the lands embraced therein, and held that Gentry had shown himself entitled to make homestead entry for the lands claimed by him; that the Commissioner's decision was based upon the ground that the lands were not subject to selection under the act of June 4, 1897, when the selections were filed, for the reason that they were not vacant lands within the meaning of said act, but were at the time occupied either by Gentry or the Pacific Livestock Company; that the latter appealed to the Secretary of the Interior, who, after a consideration of the evidence and the law, reversed the opinion of the Commissioner and dismissed Gentry's protest, holding that prior to the hearing he had not acquired the status of an occupant of the lands, as against the subsisting occupancy of the company. Hyde's selections, however, were not finally approved, but further proof was required to be made by the company to the effect that the selected lands were, at the time of filing the proof, still nonmineral in character, and not occupied adversely to said company.

3. For what particular purpose this decision was offered by plaintiff the record does not disclose, but it is now argued by its counsel that it is conclusive and binding upon the parties and their privies upon all questions of fact therein considered and determined, and as the Secretary therein concludes that Gentry was in the employment of the plaintiff, and, as its servant, was in

possession of the lands in controversy from 1894 until after the selection of the lands by Hyde in April and October, 1898, his possession was the possession of his principal, the plaintiff, and therefore it could not be adverse to it in good faith; that such determination is binding and conclusive upon courts having under consideration the determination of disputes between the same parties arising out of the same facts. It has been held by this court in *Sanford* v. *Sanford,* 19 Or. 3 (13 Pac. 602) that as to all matters of fact, within the scope of the authority of the officers of the Land Department of the United States, their findings must be taken as conclusive in the absence of fraud and mistake. This is upon the principle of estoppel by former adjudication. It is said by Mr. Justice Field, in *Smelting Co.* v. *Kemp,* 104 U. S. 636, 640 (26 L. Ed. 875), in respect to such decisions: "Their judgment in such cases is, like that of other special tribunals upon matters within their exclusive jurisdiction, unassailable except by a direct proceeding for its correction or annulment." Before, however, such decision is available as a defense of former adjudication to a plea that Gentry was in the adverse, continuous and exclusive possession under claim of right in good faith from 1900 to 1902, it must be pleaded: 9 Enc. Pl. & Pr. 617. And "a plea of former adjudication in an action involving ownership—such as trover or detinue—must aver that the question of title was actually decided in the former case, or was so involved that the judgment could not have been rendered without its determination. The only effect of such former judgment is to settle the rights of the parties up to that time, and it cannot prevent the plaintiff from recovering on a title since acquired": Id. 624.

4. No such defense was stated by plaintiff when replying to defendants' answer, and hence for that reason, if for no other, it was improperly admitted. Neither was

the offer of the document accompanied by any competent proof that it was the original, nor of its genuineness, nor was it authenticated by any certificate of the proper officer that it was a copy.

5. But if we yield to counsel the full benefit of the proof offered, is it sufficient in itself by force of the mere recitals therein, to establish all of the jurisdictional facts upon which it purports to be based, and necessary to make the decision binding upon the parties? We think not. It is incumbent upon the party making the offer to show by competent proof how the contest originated, what issues were submitted by the parties to the tribunal for its decision, and from these primary facts, when shown, the court is able to determine the proper extent and scope of the jurisdiction exercised in the particular case and whether the decision offered is within or beyond its proper limits as to jurisdiction. It was, therefore, incumbent on plaintiff to offer competent proof of valid selections by Hyde, and of Gentry's notice or protest of contest: *Brown* v. *Corson*, 16 Or. 388 (19 Pac. 66: 21 Pac. 47).

6. When that is done, it will be plain that the jurisdiction of the Land Department, in this particular matter, was to determine whether the land attempted to be selected by Hyde, on the date of the presentment of his applications, to-wit, April 15 and October 5, 1898, was "vacant and open to settlement" within the terms of the act of June 4, 1897, and this would necessarily include the determination of the nature and extent of Gentry's asserted occupancy and possession at, and prior to, that time. That question, however, is not necessarily involved in this case, but the present inquiry is, what was the character of his occupancy, and right of possession asserted by him, after that and between 1900 and 1902, from which the jury may ascertain who was the owner and entitled to the possession of the hay now in

question.    Into this latter question the department had no legitimate right of inquiry.

7. After this decision was received in evidence and read to the jury, defendants moved that it be stricken out, particularly specifying the grounds of their motion. While the motion was overruled at the time, yet the court, at the time of instructing the jury, recurred to the motion and allowed it, and instructed the jury not to consider it. This, it would seem, corrected the error of the court in admitting it. But we have thought it necessary to thus refer to it, because of its relation to other assignments of error.

8. At the conclusion of plaintiff's case, defendants moved for a nonsuit, the denial of which by the court is assigned as error. Aside from the opinion of the Secretary of the Interior, the substance of which we have stated, plaintiff's evidence, in substance, shows two deeds by F. A. Hyde and wife, one executed on June 15, 1898, and the other on June 2, 1899, conveying to plaintiff the lands claimed by it, but no competent proof was offered showing or tending to show that Hyde had any right therein to convey. The mere production of a deed to the land to plaintiff from a third person is insufficient, unless further proof of title in the grantor is produced: 28 Am. & Eng. Enc. Law (2 ed.), 673; Solomon v. Widner, 117 Mich. 534 (76 N. W. 5); Hungerford v. Redford, 29 Wis. 345. It is not shown that Hyde was ever in possession of the land or had acquired any legal or equitable title that would entitle him to possession.

9. All that is claimed is that, in April and October, 1898, he filed in the local land office selections covering this land, in lieu of certain lands included in forest reserves, the title to which he claims to have offered to surrender and convey to the United States under the act of Congress of June 4, 1897, c. 2, 30 Stat. 11, 36 (U. S.

Comp. St. 1901, p. 3768). The part of this act material to be considered is, that one owning such lands may "relinquish the tract to the Government, and may select, in lieu thereof, a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent." No competent proof, however, of any relinquishment · and selection by Hyde was offered. But waiving such matters and conceding that such proof was offered, does that invest him with any right in or to the lands so selected as against even a mere trespasser at any time before final acceptance thereof by the Secretary of the Interior or the issuance of a patent? Whatever right he may eventually acquire in such selected lands is not based upon a settlement thereon, impliedly or expressly required by the Government as a condition precedent to the acquisition of title, as would be the case of a homesteader or pre-emptioner; but, in its essence, it is a mere exchange of lands, and neither party acquires any legal or equitable title in the lands proposed to be exchanged until the acceptance or final consummation thereof: *Wisconsin Central R. R. Co.* v. *Price County,* 133 U. S. 496 (10 Sup. Ct. 341: 33 L. Ed. 687) ; *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.* 112 Fed. 4 (50 C. C. A. 79: 61 L. R. A. 230).

10. We doubt, therefore, whether after a proof of a selection made, but not finally accepted, a conveyance by Hyde to the plaintiff will add anything to its assumed right of possession and aid in making a case against defendants. The plaintiff, being a corporation, could not lawfully become a settler upon public lands, because it has no right to acquire title thereto as a settler, and therefore its occupation and inclosure of the lands was, at least before Hyde's selection, in violation of Act Cong. Feb. 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524), entitled "An act to prevent unlawful occupancy of public lands." The extent of plaintiff's rights, there-

fore, would be limited to one having *pedis possessio* or actual possession as against a mere intrusion or trespass by a stranger to the title. The plaintiff, however, has shown that, while it was in the constructive, not the actual, possession of the land, Gentry, after he had ceased to be plaintiff's servant in July, 1899, and had left possession of the land which he had formerly held for it, entered, in March, 1900, into the actual possession for himself, claiming as a settler under the homestead laws, and in May of that year made application to file on the land. How he acquired possession in March, 1900, is not shown, but it is testified that he acquired possession, claiming as a homesteader, and continued in such possession until about November, 1902, during which time he irrigated the land and harvested, or sold the right to harvest, the grass growing thereon.

11. It is urged by plaintiff's counsel that the case of *Atherton* v. *Fowler,* 96 U. S. 513 (24 L. Ed. 732) is similar to the case at bar and decisive of it. But we do not so consider it. That was an appeal from a judgment in replevin, in favor of a prior possessor, for hay cut on public lands by one who was in the adverse possession, claiming a pre-emption right when he cut the hay. The Supreme Court of California had reversed the judgment (*Page* v. *Fowler,* 28 Cal. 605) on the ground that such an action cannot be made the means of litigating and determining the right to the possessor of real property as between conflicting claimants to the possession where the title is in the United States. On appeal therefrom, the Supreme Court of the United States, reversing the case, held that no right can be initiated on government land which is in the actual possession of another by a forcible, fraudulent, or clandestine entry thereon. The facts upon which this declaration of the law is based are quite different from the facts in the present case. There plaintiff claimed by virtue

of a prior actual possession and as a *bona fide* purchaser
from Vallejo, who held under a Mexican grant therefore
adjudged to be void. Under the act of Congress of
March 3, 1863, c. 117, 12 Stat. 808, such purchasers were
granted the right to purchase from the United States
at a stated price, the lands they had reduced to pos-
session. Plaintiff was one of such purchasers. He had
not effected the purchase from the United States, but
he had the actual possession and had inclosed and had
been cultivating the land, and these things gave him,
under that statute, a preferred right to purchase. The
defendant's entry was by force, by driving plainiff out.
Here it is not shown or claimed that plaintiff was in
the actual possession, not that he was forcibly dipos-
sessed, but on the contrary it is shown that defendant
entered into possession in March, 1900, claiming as a
homesteader. Every competent locator has the right to
initiate a lawful claim to unappropriated public lands
by a peaceable, adverse entry upon it while it is in the
possession of those who have no superior right to acquire
the title or to hold the possession: *Belk* v. *Meagher*,
104 U. S. 279 (26 L. Ed. 735) ; *Thallman* v. *Thomas*,
111 Fed. 277 (49 C. C. A. 317). That action also was
against the disseisor for conversion of the hay, while
the present case is against one claiming by purchase from
the disseisor, which fact in our view, is important to be
considered, and is a potent reason why plaintiff should
not recover in this case. Assuming that plaintiff's prior
possession of the premises, together with its conveyances
from Hyde, invested it with such a legal right or title
in the land, that it was also the owner of property which
had become personal because severed from the soil, and,
by virtue thereof, it might recover the same, or the value
thereof, when wrongfully taken, yet there is a limitation
to this right of recovery when prosecuted against a
stranger who entered under a title upon which he is
justified in relying.

12. When an owner has been disseised and has recovered possession by a re-entry, by a legal fiction called relation, he is regarded as having been continuously invested with the freehold and possession, which, before re-entry, was in the disseisor: *Cutting* v. *Cox,* 19 Vt. 517; *Dewey* v. *Osborn,* 4 Cow. (N. Y.) 329; *Trubee* v. *Miller,* 48 Conn. 347 (40 Am. Rep. 177) ; *Liford's Case,* 11 Coke, Rep. 46; and, after such re-entry, he may have his action of trespass *quare clausum* against his disseisor, and laying it with a *continuando* may recover therein, besides his rents and profits, all the intermediate damage to the premises done between the disseisin and re-entry: Note to *Anderson* v. *Hapler,* 85 Am. Dec. 325, and cases there cited. And it seems that after re-entry, the owner having possession by relation may bring trover against a person who, with knowledge of the title to the property, cut and carried away timber while the owner was out of possession: Citing *Heath* v. *Ross,* 12 Johns. (N. Y.) 140. "It is a rule of the common law," says Judge FREEMAN in his able note to *Anderson* v. *Hapler, supra,* "that the doctrine of relation shall not take effect to the injury of a stranger. And the question arises whether, after regaining possession, the disseisee has any remedy for injuries to the freehold against any one else than the disseisor. Some of the authorities state that his only action is against the disseisor and his servants, and others who have committed the trespass by his command, and in his right: Keilway, 1b, Hob. 98; 1 Bac. Abr. tit. "Trespass," G. 40; 1 Roll. Abr. 101; *Lifford's Case,* 12 Jac. 4; s. c. 11 Rep. 51; *King* v. *Baker,* 25 Pa. 186; *Dewey* v. *Osborn,* 4 Cow. (N. Y.) 329; and that he can have no action against a feoffee of the disseisor, because he comes in by title, and the doctrine of relation shall not make him who comes in lawfully, that is, by title, a wrongdoer. On the other hand, there is weighty authority to the contrary, and to the

effect that after re-entry the disseisee may have his action of trespass either against the disseisor, his lessee, donee, or feoffee, or against a stranger for mesne profits, and trespass done during disseisin, on the ground, of course, that by relation the possession is regarded as having been continuously in the plaintiff since the disseisin: 2 Roll. Abr. 554; *Holcomb* v. *Rawlyns,* Cro. Eliz. 540; *Truebee* v. *Miller,* 48 Conn. 347, s. c. 40 Am. Rep. 177; *Morgan v. Varick,* 8 Wend. (N. Y.) 587; *Green* v. *Biddle,* 8 Wheat. (U. S.) 75 (5 L. Ed. 547). See *Bacon* v. *Sheppard,* 11 N. J. Law, 197 (20 Am. Dec. 584, 586), where the early authorities are collected and reviewed."

But this discussion is limited by the learned author to actions for damages to the realty or to the possession and for the rents and profits thereof, and the cases cited by him are wholly of that class. We find, however, the same divergence of authority when the rights of the disseisee are considered in actions of detinue or trover brought by him against a stranger. Of the former class *Brothers* v. *Hurdle,* 32 N. C. 490 (51 Am. Dec. 400), which denies the right to recover, is the leading case, and of the latter, *Trust Co.* v. *Hardwood Co.* 74 Miss. 584 (21 South. 396: 36 L. R. A. 155: 60 Am. St. Rep. 531) is perhaps the latest, which permits recovery. "But the action does not lie," says Judge FREEMAN, "against a stranger who enters under a person who is lawfully in possession under a process of law, such a person being, indeed, a stranger, as he has a right to rely upon the legality of process of law. Thus, in *Case* v. *DeGoes,* 3 Caines (N. Y.), 261, the action was trespass for carrying away saw logs. The defense was a license from one Bull, who was in possession by virtue of a writ of restitution, which, however, was afterwards quashed. Bull was in possession by the judgment of a court having jurisdiction of the subject-matter. The proceedings having been set aside for irregularity, Bull was considered

a trespasser by relation, but not the defendants, who were strangers. And in *Bacon* v. *Sheppard,* 11 N. J. Law, 197 (20 Am. Dec. 583), and *Menvil's Case,* 13 Rep. 21, the possession was taken under an erroneous judgment, and this being set aside, and the owner restored to possession, he had an action for mesne profits and intermediate damage, by whomsoever done, against the one who took possession under the judgment, but not against one who came in under title from the intermediate possessor."

13. Now in this case it was shown, or attempted to be shown, that in June, 1899, plaintiff brought an equity suit against Gentry which involved the right of the possession to this land, and pending the suit the latter was enjoined from entering thereon or interfering with plaintiff's possession.   But the suit was finally dismissed upon findings made that defendant had and was entitled to possession.   In June, 1900, this decree was affirmed by this court (*Pacific Livestock Co.* v. *Gentry,* 38 Or. 275: 61 Pac. 422: 65 Pac. 597), on the theory, however, that the contract between the parties was in fraud of the general government and against public policy.   But the effect of the decree is that plaintiff was not entitled in a court of equity to immediate and exclusive possession of the property as against defendant. Now in addition to this adjudication between the parties, the Commissioner of the General Land Office on December 16, 1901, on Gentry's contest against Hyde, rejected the latter's selections, and held that Gentry had shown himself entitled to make homestead entry for the lands claimed by him, thereby confirming the previous decision of the receiver.   We are of the opinion that the defendants were justified in relying upon these adjudications of Gentry's rights, when they purchased from him the hay he had cut and the right to cut other hay and depasture the land.

14. In any event, because of these decisions, it cannot be said (what must necessarily be said to entitle plaintiff to recover in this action) that at the time defendants purchased, plaintiff had possession or the right of immediate possession, for in consequence thereof it could not then have obtained possession of these premises or of the hay by any legal proceedings instituted for that purpose. In legal contemplation it did not have at that time the immediate right to possession.

From these considerations it follows that defendants' motion for nonsuit should have been allowed. Therefore the judgment must be reversed and the cause remanded for a new trial.                                    REVERSED.