GILES M. SONGER

*v.*

GEORGE LYNCH.

EXCHANGE OF PROPERTY—*a party, to maintain a suit on a contract to exchange property, must show performance on his part.* A party took corn to a mill to exchange for meal, where the custom was to weigh the corn and require the owner to put it in a crib near the mill, and then deliver meal to him in exchange. In putting the corn in the crib, the owner let a portion of it fall on the ground, and the employees at the mill told him he must put the corn in the crib, or be docked in the amount of meal. He declined to put the corn in the crib, and left without demanding either his corn or meal: *Held*, on a suit brought by the owner of the corn, that he could not recover on the ground of a breach of contract to deliver meal, because he had not performed his part by delivering the corn in the crib, nor for a conversion of his corn, because, having put it into the miller's possession, a demand and refusal would be necessary before he could claim that there was any conversion.

APPEAL from the Circuit Court of Marion county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. RASER & GOODNOW, for the appellant.

Mr. B. B. SMITH, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

In the fall of 1873, appellee took to the defendant's grist mill a sack of corn, in the ear, to exchange for meal. It was

the custom of appellant to receive corn and exchange meal for it, weighing the corn, and requiring the owner to put it in a crib near the mill. The custom seems to have been to weigh the corn, and, after deducting the weight of the cobs and the toll, to give the same number of pounds in meal. In this case, the corn was weighed, amounting to 62 pounds in the ear. Appellant was directed to put the corn in the crib. This he did through a window, but in doing so, the weight of the evidence, we think, shows that he let fall on the ground from a peck to a half bushel of ears. He then presented his sack for the meal, but was told by hands in the mill that he must throw the corn into the crib, or be docked on the amount of meal. He declined to put the corn in the crib, and left. He, without making any demand for the meal or corn, brought suit before a justice of the peace. A trial was had, resulting in a judgment for 25 cents, whereupon an appeal was prosecuted to the circuit court, where a trial resulted in a similar judgment, from which this appeal is prosecuted.

As a general rule, a party, to recover on a contract, must perform, or offer to perform, his part of the agreement, before he can put the other party in default. If this transaction be considered as an agreement to exchange corn in the ear for meal, and the owner of the corn to put it into the crib, and then receive the meal, then appellee has signally failed to prove that he has complied with his contract, as the decided weight of the evidence shows that he did not put the corn in the crib, but, on the contrary, left from a fourth to a half of it on the ground. He was, therefore, not entitled to demand the meal until he put the corn into the crib. Appellant was not bound to deliver the meal until he put all the corn into the crib, but the hands of appellant said they must dock him in the weight of the meal unless he would put the corn that had fallen out, into the crib, but were willing to give him the proper amount of meal for what he had placed in the crib. Having failed to perform his part of the undertaking, he can not sue for a breach of contract.

If, however, it be treated as an action of trover, then appellee testifies that he made no demand for the meal or a return of the corn. Having placed the corn in the possession of appellant, he can not claim there was a conversion, unless he had made a demand and there had been a refusal, which would have been evidence of a conversion. He can not know but appellant is ready to restore to him his corn, if he will demand it, or give him the amount of meal, without any deduction, if he will but make the demand; but none having been made, trover will not lie, nor are we aware of any other action in which he could recover without performing his part of the undertaking, or making a proper demand.

The amount is trifling in this case, and the suit must have been the result of bad feeling and a disposition to annoy. Appellee never saw appellant, but acted entirely on what was said and done by the employees at the mill. He made no demand, and may have been, and probably was, anxious for a pretext for the suit, as the evidence shows he demanded $10 when he sued before the justice of the peace, and claimed an amount he knew appellant would not pay to the constable, when the service was made, and thus end the strife; but trifling as the case is, and as much feeling as there may be, we must apply the rules of law that govern similar cases of importance. The finding of the jury was manifestly against the evidence, as well as the instructions, and the court below erred in not granting a new trial.

The judgment is reversed.

*Judgment reversed.*