## McLAIN vs. HUFFMAN.

1.   WAGER: *On a horse race void, etc.*

  A wager on a horse race is illegal and void, and the winner cannot recover from the stakeholder more than his own deposit.

2.   BAILMENT: *Liability of bailee before demand.*

  No right of action accrues against a bailee before demand and a refusal to deliver the deposit, unless there has been a wrongful conversion, or some loss by gross negligence on his part.

APPEAL from *Clark* Circuit Court.

Hon. GEORGE A. KINGSTON, Circuit Judge.

*S. R. Cockrill* for appellant.

All gaming contracts are void.   Gantt's Digest, sec. 2987;  51 Ill., 473;  23 ib., 493;  *in re Chandler*, Am. Law Register, May, 1874, p. 315;  3 Bacon's Abr., 343, Lit. gaming;  *Clayton* v. *Jennings*, 2 Blk. Reps., 706;  2 Wils., 36;  ib., 309;  ib., 220;  41 Ill., 382;  2 Swan, Tenn., 146.

Sec. 2986 merely restores the common law maxim, of leaving the parties alone, who are "*in pari delicto*" in turf racing.   20 Eng. Com. Law, 185. (*405) ;  Smith *contra,* *169 ;  2 Parsons Cont., 139;  Dunlap's Paley's Agency, 66 ;  23 Ark., 221;  26 Ill., 404;  13 Ind., 178;  ib., 344;  4 Mich., 329;  3 Dutch. (N. Y.), 55;  5 Herning (Del.), 347;  19 Maine, 335;  18 Vt., 9 ;  15 Conn., 28;  16 Sergt. and Rawl., 147 ;  5 T. R., 405;  7 ib., 531; 2 Esp., 629;  4 Tannt., 474;  2 B. and T., 467.

McLain vs. Huffman.

The courts have been reluctant to recognize wager contracts. *Le Costa* v. *Jones*, Cowp. 729; 4 Camp., 39, n.; 2 Mass., 1; 1 Bailey 486; 1 Stobbart, 82; 3 N. H., 152; 3 Penn., 468; 15 Conn., 28; 2 Vt., 144; 1 Nott and McC., 178; 52 N. H., 507. Plaintiff could not recover even his deposit, without disaffirming the contract. *Harris* v. *Foster*, 19 Ark., 356, *et seq.*; 3 Ark., 227; 35 Mo,, 418; 6 Wis., 468.

A demand before suit was necessary. Story's Bailments, secs. 107, 120; 10 Ind., 161; 8 Ark., 109; 13 ib., 28; 16 Minn., 299; 3 Pitts (Tenn.), 28. The stakeholder became responsible to McLelland after notice. 11 Ind., 447; ib. 59; 10 ib., 161; 15 B. Monroe, 634; 18 Tenn., 329; 2 Pars. (*sup.*).

The race was not decided and the testimony fails.

*J. M. Moore* for appellee.

Horse racing not illegal at common law. Smith on Cont., 256, *et seq.; Evans* v. *Cooley*, 42 Eng. Com. Law Rep., 759; *McElroy* v. *Carmichael*, 6 Ga., 456. Here it is excepted from the gaming act.

Turf racing was not intended to be discouraged by law. *Stith* v. *State*, 13 Ark., 680; *Martin* v. *State*, 15 ibid, 71; *State* v. *Rorie, et al.*, 23 ibid, 726; 1 Morris (Iowa), 169; *McElroy* v. *Carmichael*, (*sup.*).

The stakeholder was a bailee for winner—the wager being legal. 2 Parsons on Cont., 626, *et seq.* No demand was necessary. Ib., 628. The burden of proof was on defendant to show it was not a turf race. *Nelson* v. *Waters*, 18 Ark., 573.

HARRISON, J. :

Huffman and McLelland bet fifty dollars on a horse race, and put the money in the hands of McLain as stakeholder. The race was run, and Huffman claimed to be the winner, and demanded the money. McLelland was dissatisfied and notified McLain not to pay it over.

Huffman sued McLain before a justice of the peace for the $100—amount of the bet—and recovered judgment. McLain appealed to the Circuit Court. Upon trial in the Circuit Court the plaintiff again recovered judgment for $100, and the defendant then appealed to this court.

It was proven that when the plaintiff demanded the money the defendant offered to return him the fifty dollars he had put up, but he declined to receive that unless the other fifty were also given him, and evidence was given to prove that Huffman was the winner of the race, and that the same was a turf race.

In a proper case the court will judicially notice what is a turf race, but from the view we take in this it will not be necessary for us to decide whether the race in question was such or not.

An action might, by the common law, be maintained for a wager which was not contrary to public policy, immoral, nor affected the interest, feelings or character of a third person. Chit. on Con., 438. But such actions were never favored by the courts, and regrets often expressed that they had ever been sanctioned. Ib., 440.

Story, in his work on contracts, says: " The courts have often reprehended these contracts, and seized upon every opportunity and every circumstance to invalidate them." Story on Con., sec. 566.

In Massachusetts, Maine, Vermont and Pennsylvania the courts without any statute declaring them void, refused to enforce them. *Ball* v. *Gilbert*, 12 Met., 397; *Perkins* v. *Eaton*, 3 Maine, 152; *Lewis* v. *Littlefield*, 15 ib., 233; *Collamer* v. *Day*, 2 Vermont, 144; *Edgell* v. *McLaughlin*, 6 Whar., 176.

And now in England, by an act of Parliament (8 and 9 Vict., c 109, sec. 18) all contracts or agreements by way of gaming or wagering are made void.

In this State all such contracts are declared void by statute. Section 2987, Gantt's Digest, says: " All judgments, conveyances, bonds, bills, notes, securities and contracts, where the consideration, or any part thereof, is money or property won at any game, or gambling device, or any bet or wager whatever, or for any money or property lent to be bet at any gaming or gambling device, or at any sport or pastime whatever, shall be void."

In this suit the plaintiff seeks to recover the wager deposited by the loser with the stakeholder, upon the promise or agreement of the defendant to deliver the same to him if he should win. Now what is the consideration for the defendant's promise ? Most clearly the bet between the plaintiff and McLelland, consummated upon the deposit of the stake in his hands. The deposit and his agreement to deliver them to the one winning did not, of themselves, constitute the contract between him and the plaintiff, but the bet was a constituent and material part of the consideration for such agreement. But were it possible to distinguish the defendant's agreement from the wager contract between the plaintiff and McLelland; yet growing out of and made in aid of such illegal contract, in contemplation of the act against gaming and betting, it was, according to a well established principle, void. *Tatum* v. *Kelley*, 25 Ark., 209 ; *Pratt* v. *Adams*, 7 Paige, 615; *Lightfoot* v. *Tenant*, 1 Bos. and Pull., 551; *Langton* v. *Hughes*, Maude and Sel., 593.

But because money or property lost on a turf race is, by section 2786, excepted from the provisions of section 2984, by which an action is given to " any person who shall lose any money or property at any game or gambling device, or any bet or wager whatever, to recover it back from the person winning the same, it is contended by appellee that a wager or bet on a turf race is not illegal. It does not follow as a necessary consequence, because

the loser cannot sue to recover back the money or property which he has lost on such a race, the winner can maintain an action for the wager he has won.

The obvious design and purpose of the statute declaring all gaming and wagering contracts void, is the suppressing of the pernicious vice of gaming and betting, and as a remedial statute whose object is so consistent, not only with sound morality and the best interests of society, but in accord with the spirit of the age, it should be so construed as to reach the evil in all its forms. But such wagers are within the very language of the statute, as well as its most clear and evident meaning. The plaintiff was not, therefore, entitled to recover from the defendant the money put in his hands by McLelland.

That the plaintiff is entitled to receive back the money deposited by himself there can be no question, but having refused to accept it when tendered him by the defendant unless that deposited by McLelland, to which he had no right, was also paid over, the defendant was in no default, or liable to be sued therefor. " No right of action accrues in any case against a bailee unless there has been some wrongful conversion, or some loss by gross negligence on his part, until after a demand made upon him, and a refusal by him to deliver the deposit." Sto. on Bail., 107.

The court below should have given the defendant a new trial, and its refusal to do so was an error for which its judgment must be reversed and the cause remanded to it, in order that a new trial may be had and the cause proceeded in according to law.