Submitted on briefs March 4, reversed March 11, argued on rehearing June 3, reversed on rehearing September 30, costs taxed November 12, 1924.

# A. L. JEFFRIES *v.* CHARLES F. PANKOW.

(223 Pac. 745; 229 Pac. 903.)

**Contracts—Surrender of Possession to Conditional Seller Held No Consideration for Latter's Agreement to Resell and Pay Proceeds in Excess of Amount Due to Buyer.**

1.   Delivery of an automobile by a buyer thereof under a conditional sales contract to the seller as agreed, on the buyer's default in payment of installments, is no consideration for the seller's agreement to sell it and pay the buyer the proceeds in excess of the amount owing.

ON REHEARING.

**Trover and Conversion—Demand Necessary Where Possession was Taken With Consent.**

2.   Before cause of action will arise upon detention of property, which had its origin in consent of plaintiff, it must appear that a demand was made for its return.

**Trover and Conversion—Complaint Held Insufficient for Failure to Excuse Lack of Demand.**

3.   Where complaint showed that defendant's possession was originally rightful, it was necessary for plaintiff, not alleging demand, to allege facts obviating necessity of demand to constitute conversion; but averment that defendant had used the property as his own property did not show that demand would have been vain.

**Trover and Conversion—Use of Property by Rightful Possessor not Conversion, Unless in Defiance of Owner's right.**

4.   Use of another's property by one in rightful possession thereof is not conversion thereof, unless the use was in complete defiance of the owner's title and with an intent permanently to deprive him of his property therein.

**Trover and Conversion—Judgment and Satisfaction, Transfer of Title.**

5.   The effect of a judgment in trover and the satisfaction thereof is to transfer title to defendant as of date of conversion.

1.   Election of remedies on breach of contract of conditional sale, see notes in 1 Ann. Cas. 268; 16 Ann. Cas. 1057; Ann. Cas. 1917D, 464.

Effect of the taking of property by seller on rights and remedies of the parties to a contract of conditional sale, see note in L. R. A. 1916A, 915.

See 13 C. J., p. 353.

Dismissal and Nonsuit—Defendant's Motion for Nonsuit, Because of Insufficiency of Complaint to State Cause of Action, Should have been Granted.

6. Where complaint was insufficient to plead cause of action, defendant's motion for nonsuit should have been granted.

Pleading—Insufficiency of Complaint to State Cause of Action is Never Waived.

7. Objection of insufficiency of complaint to state cause of action is never waived.

Sales—Parties may Stipulate as to When Title Passes.

8. Under Section 8183, Or. L., it was competent for buyer and seller to agree by written contract that title should not pass to buyer until any and all judgments obtained thereon were paid and satisfied in full and all conditions were performed, thus taking the matter out of the rules for ascertaining parties' intention as to passing of title as expressed in Section 8182.

From Tillamook: GEORGE R. BAGLEY, Judge.

In Banc.

REVERSED.

For appellant there was a brief over the name of *Mr. Webster Holmes.*

For respondent there was a brief over the name of *Messrs. Botts & Winslow.*

BURNETT, J.—The defendant is a dealer in automobiles. He agreed to sell to the plaintiff an automobile under a conditional sales contract which contained the following provisions:

"The said property and the whole thereof shall remain the property of said seller and title to said property shall not vest in the buyer until the unpaid balance of the purchase price and any judgment or decree rendered thereon is wholly paid, together with taxes, assessments, insurance, costs and expenses of litigation as above mentioned, and in case the buyer makes default of payment of said amounts * * the buyer shall on demand deliver the property to the seller or his assigns in as good condition as when

received, reasonable use and wear excepted, the said seller or his agent or assigns shall have the right, without notice or demand, to take immediate possession of said property * * all money paid on the purchase price thereof shall at the option of the seller belong to the seller or his assigns as liquidated damages for non-fulfillment of this contract by the buyer and for loss in value of said property and for the use and rental thereof while being in the possession of the buyer and any claim or equity of the buyer in said property shall utterly cease and determine without reclamation or compensation";

With this contract, which is admitted by both parties, the defendant delivered to the plaintiff the automobile therein described. Afterwards, the plaintiff being unable to make payment of the installments due, the defendant retook the property into his own possession. Complaining now, the plaintiff charges that the redelivery of the property to the defendant was on the agreement that the latter would take it, try to sell the same, obtain the best available price, and that from the proceeds of the sale, plaintiff should receive all that was obtained over and above $1,100 then still owing to the defendant on the purchase price.

The essence of the plaintiff's grievance is contained in this allegation of the complaint:

"That defendant without selling said car except as hereinafter stated, on or about the 20th day of July, 1920, willfully appropriated and converted said property to defendant's own use, and has ever since said date used said property as his own property, and plaintiff waives any tort committed by defendant in said conversion and appropriation of said property, and elects to charge defendant with the reasonable value of said property, less the balance owing on the purchase price thereof by plaintiff, as for an implied purchase by defendant of plaintiff's interests therein."

The answer set up the contract in full, the same being in writing, attaching a copy thereof as Exhibit "A" and as stated, the plaintiff admits that this was the contract under which the parties operated. Other issues were formed in the pleadings in the nature of *res judicata* and estoppel based upon litigation for the collection of a note given as part of the purchase price but it is not necessary to consider those questions.

Under the contract, the property remained that of the defendant seller. It was admitted that the buyer made default in his payment due on the contract. Under those conditions he expressly stipulated that upon demand, he would deliver the property to the seller and that the latter should have the right, without notice or demand, to take immediate possession of the same. Having agreed to do this, it formed no consideration for the attempted contract set up in the complaint. The plaintiff has no right under his allegation set out in the complaint "to charge defendant with the reasonable value of said property."

At the trial, the plaintiff gave evidence about what occurred when the defendant called on him to surrender the possession of the car and what was said about his receiving the surplus remaining after satisfying the original contract price out of the proceeds of any sale the defendant might thereafter make of the car. Having rested, the defendant moved for a nonsuit on the ground, among others, that the complaint does not state facts sufficient to constitute a cause of action for the reason that there was no allegation of any consideration supporting the alleged agreement. The motion was denied and this is the principal ground of the defendant's appeal from the ensuing judgment. That conditional sales contracts are valid and that the property in such cases remains in the

seller until the purchase price is fully paid is settled by *Singer Mfg. Co.* v. *Graham,* 8 Or. 17 (34 Am. Rep. 572); *Landigan* v. *Mayer,* 32 Or. 245 (51 Pac. 649, 67 Am. St. Rep. 521); *Schneider* v. *Lee,* 33 Or. 578 (17 Pac. 269); *Herring-Marvin Co.* v. *Smith,* 43 Or. 315 (72 Pac. 704, 73 Pac. 340); *McDaniel* v. *Chiaramonte,* 61 Or. 403 (122 Pac. 33); *Thienes* v. *Francis,* 69 Or. 165 (138 Pac. 490); *Francis* v. *Bohart,* 76 Or. 1 (143 Pac. 920, 147 Pac. 755, L. R. A. 1916A, 922); *International Harvester Co.* v. *Bauer,* 82 Or. 686 (162 Pac. 856); *Pelton Water Wheel Co.* v. *Oregon Iron Co.,* 87 Or. 248 (170 Pac. 317); *Miles* v. *Sabin,* 90 Or. 129 (175 Pac. 863); *First National Bank of Sheridan* v. *Yocom,* 96 Or. 438 (189 Pac. 220); *Endicott* v. *Digerness,* 103 Or. 555 (205 Pac. 975).

1. Clearly, the property was that of the defendant at all times named in the pleadings. The allegation that he converted his own property to his own use is sham. The doing by the plaintiff of what he already had agreed to do in surrendering to the defendant the latter's own property formed no consideration for the agreement he attempts to allege in his complaint. The complaint was demurrable in not averring a consideration sufficient to support the alleged agreement. The judgment of the Circuit Court is reversed, with directions to enter a judgment of nonsuit on the motion of the defendant.

REVERSED WITH DIRECTIONS.    COSTS.

---

Judgment reversed with directions on rehearing, September 30, 1924.

ON REHEARING.

(229 Pac. 903.)

For appellant there was a brief over the name of *Mr. Webster Holmes,* with an oral argument by *Mr. C. W. Barrick.*

For respondent there was a brief over the name of *Messrs. Botts & Winslow,* with an oral argument by *Mr. George Winslow.*

BURNETT, J.—This case was originally submitted on briefs and reversed in an opinion reported in 223 Pac. 745. On a lengthy petition for rehearing accompanied by a bumptious brief the court granted the prayer of the petition and the case has been again argued. As before, the citations and arguments of counsel have had careful consideration.

It seems to be the contention for the plaintiff that in considering the sufficiency of the complaint, no notice whatever should be taken of the admitted contract between the parties out of which the transaction arose and which appears in the answer. The complaint therefore will be examined upon that basis.

The pleading in question is as follows:

"Plaintiff for cause of action against defendant alleges:

"1. That on or about the 7th day of April, 1920, plaintiff and defendant entered into a contract wherein and whereby defendant promised and agreed to sell to plaintiff the following described personal property, to wit. One five-passenger Nash touring car. Serial Number 160417, for the purchase price of $1830.00, the sum of $730.00 being paid by plaintiff upon said purchase price at the time of entering into the agreement, and the balance of said purchase price to wit, $1100.00, plaintiff agreed to pay defendant, and in pursuance of said contract and payment made on the purchase price, defendant delivered possession of said property to plaintiff.

"2. That on or about the 7th day of July, 1920, plaintiff delivered said property to defendant, upon the express understanding and agreement that defendant would take said car and try to sell the same, said defendant being engaged in the general garage and automobile business at Tillamook City, Oregon, and would try and obtain for said property the best

available price, and that from the proceeds of said sale plaintiff should receive all that was obtained over and above the $1100.00 which was still owing by plaintiff to defendant upon the purchase price of said car.

"3. That at the time of the delivery of said car to defendant by plaintiff as aforesaid, and at the time of the conversion and appropriation thereof as hereinafter set forth, said car was of the reasonable value of $1650.00.

"4. That defendant without selling said car except as hereinafter stated, on or about the 20th day of July, 1920, willfully appropriated and converted said property to defendant's own use, and has ever since said date used said property as his own property, and plaintiff waives any tort committed by defendant in said conversion and appropriation of said property, and elects to charge defendant with the reasonable value of said property, less the balance owing on the purchase price thereof by plaintiff, as for an implied purchase by defendant of plaintiff's interest therein.

"5. That defendant fails, neglects and refuses to pay plaintiff any part thereof, and the whole thereof is now due and owing from defendant to plaintiff."

This declaration concluded with a demand for judgment against the defendant for $500 with interest thereon at 6 per cent per annum from July 20, 1920, and for the costs and disbursements of the action.

2. The plaintiff attempts to declare as for trover and conversion. It is said that he delivered the property to the defendant on July 7, 1920, of course with the understanding alleged. This being true, the defendant was in the lawful possession of the car by the consent of the plaintiff. The attempted declaration of trover and conversion is not laid in the *cepit* in this instance. If it lies at all, it must have been in the *detinet*. The difference between the two is that in the first the action is grounded on the unlawful taking of the property without the consent

of the owner. In the second instance it is based on unlawful detention, and before a cause of action will arise upon the detention of the property which had its origin in the consent of the plaintiff, it must appear that a demand was made for its return.

It is said, 38 Cyc. 2032:

"Trover will not lie against one rightfully in possession. Such a possession must first be transformed into a wrongful one by a refusal to surrender property. Hence a demand and refusal are necessary for the maintenance of trover in all cases in which the defendant was rightfully in possession. Demand and refusal are superfluous however, whenever a conversion can be otherwise shown and evidence thereof may be omitted only if one of the following circumstances is proved: Unavailability of a demand and possession maintained in violation of one's contract and tortious taking and tortious levee or attachment; acts of ownership; retention of money which it was the defendant's duty to pay to plaintiff; diversion of property from the special purposes for which it was received; an unfulfilled promise to return the goods or another distinct act of conversion in general."

3. We are considering at present only the sufficiency of the complaint without reference to any other writing in the record. Having shown in the early part of his complaint that the defendant was rightfully in possession of the chattel, the plaintiff must then aver something to obviate the necessity of demand in order to constitute conversion. In the absence of some such allegation dispensing with demand, the plaintiff cannot prove an excuse for not demanding a return for the proofs must correspond with the pleading.

"He who seeks to recover in trover must prove that he was in actual possession of the chattel converted at the time of conversion or that he had the

right of immediate possession thereof." 38 Cyc. 2044.

In *Pacific Livestock Co.* v. *Isaacs*, 52 Or. 54, 70 (96 Pac. 460, 466), the action was in conversion for the value of a quantity of hay. Concluding the discussion of the various phases of the case, the court used the following language:

"In any event, because of these decisions it cannot be said (what must necessarily be said to entitle plaintiff to recover in this action) that at the time defendants purchased, plaintiff had possession or the right of immediate possession,"

The same doctrine is taught in *Johnson* v. *Oregon Steam Nav. Co.*, 8 Or. 35. In the present instance, according to the complaint the property was never to be returned to the plaintiff. On the contrary, the defendant was to try to sell it and the only right respecting the property was that the plaintiff should have the surplus of the proceeds of sale over what was necessary to liquidate the balance of the original purchase price of the car. No act of the defendant is pleaded which amounts to a conversion, or which excuses the lack of demand or the necessity of the plaintiff being in possession or entitled thereto at the commencement of the action unless it be the following:

"That defendant, without selling said car except as hereinafter stated, on or about the 20th day of July, 1920, willfully appropriated and converted said property to defendant's own use, and has ever since said date used said property as his own property."

As already pointed out, where the matter lies in the *detinet* no conversion can be predicated on the transaction until there has been a demand. So far, therefore, as the phrase "willfully appropriated and converted said property to defendant's own use" is concerned, it must be laid aside in face of the fact,

otherwise appearing in the same pleading, that the possession of the property was voluntarily delivered by the plaintiff to the defendant. The averment that the defendant has used the property as his own property does not show that a demand for its return would have been vain.

In *Owens* v. *Weedman*, 82 Ill. 409, according to the syllabus it is said:

"To maintain trover the plaintiff must show a tortious conversion of personal property and that at the time of such conversion he had a right of property in the chattel converted and also had the possession thereof or a right to its immediate possession."

The court there quoted with approval 1 Chitty's Pleading, 167, as follows:

"To support this action the plaintiff must at the time of the conversion have had a complete property, either general or special, in the chattel and also the actual possession thereof or the right to the immediate possession thereof."

4, 5. The mere use of the property constitutes no more than a trespass which may be compensated by the actual damage inflicted upon the owner, which would be covered by the reasonable value of the use to which it was put. It would be grossly unjust to lay down as a hard-and-fast rule that because A had used the property of B to some extent, he should be compelled to buy the same or what is in the same effect, to pay as damages the full value of the property. The effect of a judgment in trover and the satisfaction thereof is to transfer to the defendant as of the date of the conversion, the title of the property converted: 38 Cyc. 2112; *Hepburn* v. *Sewell*, 5 Har. & J. (Md.) 211 (9 Am. Dec. 512); *Backus* v. *West*, 104 Or. 129, 146 (205 Pac. 533). The pleading and proof must go further and show that the use was

in complete defiance of the plaintiff's title and with an intent permanently to deprive him of his property therein.

A leading case on this subject is *Lee Tung* v. *Burkhart*, 59 Or. 194 (116 Pac. 1066). The subject is exhaustively considered in the opinion written by Mr. Justice BEAN. The essence of the decision is found in the syllabus as follows:

"In order to maintain an action for conversion, there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiff's rights, or else a withholding of the possession under a claim or right or title inconsistent with that of plaintiff.

"In trover it is not enough that the facts show a trespass, it not being a conversion, unless defendant's dominion is a denial or a repudiation of the owner's right or title.

"In actions in the nature of trespass or case for misfeasance, plaintiff recovers only the damages suffered by the wrongful acts of defendant.

"In trover the general rule of damages is the value of the property at the time of conversion, diminished, when the property has been returned, by the value of the property at the time of return."

We remember that the allegation of the complaint is not that the defendant agreed actually to sell the car but only that he would try to sell the same and would try to obtain for it the best available price. For all that appears on the face of the plaintiff's declaration, the defendant may have been all the time trying to sell the car. His mere use of it would not be inconsistent with that duty so as to amount to more than a trespass. The complaint has not charged the defendant with not trying to sell the car. In order to make his possession wrongful and so

112 Or.—29

support an action in trover, there must be some breach of the contract imputed to him which necessarily means to deprive the owner of his property in the chattel. In brief, the complaint goes no further than to show a possible trespass in using the car. It does not show that the defendant challenged the title of the plaintiff or sought to deprive him thereof, neither does the mere use of the property excuse the necessity of a demand for its possession in order to support trover. It is true that some authorities on pleading say that it is sufficient in trover to aver that the plaintiff, at a certain time and place, was the owner of and entitled to the possession of the chattel in question and that at the time the defendant wrongfully converted the same to his own use to the damage of the plaintiff in a sum stated. This probably would be sufficient although our Code, Section 67, requires that the first pleading shall contain "a plain and concise statement of the facts constituting the cause of action without unnecessary repetition." The plaintiff has not completely pursued either method of pleading. He has not shown that he was entitled to the possession of the property at any time after he surrendered it to the defendant. Neither has he shown that he demanded the return of the property or that its return was refused by the defendant. On the contrary, he has shown that the defendant was rightfully in possession of the property. In such case, no cause of action in trover or conversion will lie against him without a demand for the return of the property unless it should further appear that the defendant has put it beyond his power to comply with the demand so that a demand would be useless. In other words, having gone so far in a statement of facts, as distinguished from the common-law forms of pleading, as to show that the defendant was

rightfully in possession of the property, the plaintiff, if he would recover, must go further in his pleading and show something that as a matter of law would break up the rightfulness of that possession. Even if we concede that the allegation of conversion is sufficient if considered alone, yet when it is disclosed elsewhere in the complaint that the property is rightfully in possession of the defendant, a condition is presented rendering it impossible for the plaintiff to prove conversion for want of a demand for possession or in the alternative that some pleaded facts exist rendering a demand vain. A complaint showing, as this one does, the rightfulness of the defendant's possession, yet charging conversion without averring a demand for a return of the chattel is as incongruous as the phrases "white blackbird" or "truthful liar."

In *Wilson* v. *Curry*, 149 Ala. 368 (42 South. 753), it is said:

"The possession having been acquired lawfully, in order to make his detention wrongful there must be a demand."

*Louisville etc. Ry. Co.* v. *Kauffman*, 141 Ala. 671 (37 South. 659), was a case of trover and conversion brought by a shipper for a barrel of whisky shipped by the railroad company but not delivered by it to the consignee. The court there said, treating of the subject:

"To make out the alleged conversion, it was upon the plaintiff to prove a demand for the property on the defendant and a refusal by the defendant to surrender it."

In *McLain* v. *Huffman*, 30 Ark. 428, the winner of some money bet on a horse-race brought action

against the stakeholder to recover the same. The court said:

"No right of action accrues in any case against a bailee unless there has been some wrongful conversion or some loss by gross negligence on his part until after demand made upon him and a refusal made by him to deliver the deposit," citing Story on Bailments, 107.

In *Songer* v. *Lynch*, 72 Ill. 498, the plaintiff had taken some corn to mill and had put it in possession of the miller. Some contention arose about the matter and he brought trover concerning which the court said:

"Having placed the corn in possession of appellant, he cannot claim there was a conversion unless he had made a demand and there had been a refusal which would have been evidence of a conversion."

Again, in *Carleton* v. *Lovejoy*, 54 Me. 445, the syllabus reads thus:

"When personal property comes rightfully into the possession of the defendant, a demand and refusal are prerequisites to the maintenance of trover for its value."

We find this language in *Temple Co.* v. *Penn. Mutual Life Ins. Co.*, 69 N. J. Law, 36 (54 Atl. 295):

"The defendant being lawfully in possession of the property, that possession could not become tortious until it had refused upon demand made to deliver them to the plaintiff."

*Goodwin* v. *Wortheimer*, 99 N. Y. 149 (1 N. E. 404), was an action in trover by a vendor against the assignee of the vendee based upon the fraud of the latter in the purchase of goods. The court said:

"The original possession of Wortheimer being lawful and not tortious, it was necessary to change the character of his possession by a demand and refusal,

before the plaintiff could maintain an action against him for conversion or to recover the goods.''

The following precedents teach the same doctrine: *Moynahan* v. *Prentiss,* 10 Colo. App. 295 (51 Pac. 64); *Semon* v. *Adams,* 79 Conn. 81 (63 Atl. 661); *Auld* v. *Butcher,* 22 Kan. 400; *Fairbanks* v. *Phelps,* 22 Pick. (Mass.) 535; *Macdonnell* v. *Buffalo Loan Co.,* 193 N. Y. 92 (85 N. E. 801); *Converse* v. *Sickles,* 146 N. Y. 200 (40 N. E. 777, 48 Am. St. 790); *Castle* v. *Corn Exchange Bank,* 148 N. Y. 122 (42 N. E. 518); *Tompkins* v. *Fonda Glove Lining Co.,* 188 N. Y. 261 (80 N. E. 933).

The precedents cited by the plaintiff have had our consideration. For instance:

*Geren* v. *Hollenbeck,* 66 Or. 104 (132 Pac. 1164), was a case where the defendant loaned the plaintiff's automobile to a third party without the plaintiff's consent and it was wrecked by the borrower. It was held to be no defense to the action that the car was subject to a chattel mortgage which had since been foreclosed.

*French* v. *Osmer,* 67 Vt. 427 (32 Atl. 254), was a case between the vendor and a third party, a stranger to the contract for the sale of the property.

*Stotts* v. *Puget Sound Traction, Light & Power Co.,* 94 Wash. 339 (162 Pac. 519, L. R. A. 1917D, 214), was a case where the plaintiff had possession of a truck under a conditional sale contract upon which he had made some payments and it was damaged in a collision with one of the defendant's street-cars. It was held that he could maintain an action against the defendant. All these are cases between one of the parties to the contract and some stranger, and do not affect the present contention.

In *Reinkey* v. *Findley Electric Co.,* 147 Minn. 161 (180 N. W. 236), the action was between parties to the

contract to recover damages for the wrongful taking of certain personal property sold by the defendant to the plaintiff on a contract of conditional sale. The company had taken the property from the possession of the plaintiff against her consent counting upon a default in making payments upon the property. The plaintiff excused her default by the allegation that the defendant had extended the time of payment to a date subsequent to the time the property was taken from her. Opposing this extension the defendant urged that there was no consideration for it, concerning which the court said:

"The defendant is seeking to enforce a forfeiture of the payment made and absolute title to the property sold. It cannot make nonpayment which it induced a ground of forfeiture. The doctrine may be rested upon the ground of estoppel or of waiver."

Nothing of that sort appears in the present contention.

In *Carvell* v. *Weaver*, 54 Cal. App. 734 (202 Pac. 897), the terms of the conditional sales contract are not given in the report but the court said:

"The legal title is not always necessary to an action for conversion but any special valuable interest in the property accompanied with the right of possession is sufficient to form a basis of such an action."

In the instant case at bar the plaintiff does not show that his interest in the property, whatever that may be, was "accompanied with the right of possession." On the contrary, his pleading puts the right of possession in the defendant with the plaintiff's consent and nothing is averred which would defeat that rightful possession.

*Clark* v. *Clement*, 75 Vt. 417 (56 Atl. 96), was a case where the wrongfulness of the taking depended

on a violation of the Vermont statute requiring a sale of property at auction in such cases. Hence it is not here applicable.

*Roper Wholesale Grocery Co.* v. *Favor,* 8 Ga. App. 178, 181 (68 S. E. 883, 884), contains this language:

"It is not necessary, in order to maintain an action of trover, that the plaintiff have title. If he have either such a title or property as to confer right of possession he may maintain trover against one who wrongfully deprives him of his right. 'To maintain an action of trover, the plaintiff must show title in himself or the right of possession wrongfully withheld from him by the defendant.' "

As before pointed out, the complaint here does not show that the possession is wrongfully withheld from the plaintiff.

In *Roberson* v. *Withers,* (Tex. Civ.), 152 S. W. 1160), the vendor took possession of the property before there was any default of the buyer and without the consent of the latter. Here the property was in possession of the defendant by the consent of the plaintiff and the plaintiff has not shown that he performed his part of the executory contract for the sale of the automobile so that he could put the defendant in default. These precedents cited by the plaintiff in his "additional points and authorities found since writing his brief" are not in point in the present contention.

6, 7. Considering the complaint wholly with reference to its own language, it does not state facts sufficient to constitute a cause of action against the defendant and this having been suggested to the court as a basis for an involuntary nonsuit, the motion should have been allowed; for the objection is never waived and, granting that the plaintiff had proved everything he had alleged, his cause was not suffi-

cient to be submitted to the jury. This error is specified in the assignments and cannot escape our consideration.

It is well at this time to make a few observations on the remainder of the record in addition to the consideration of the complaint. In his further and separate answer, the defendant avers:

"That on or about the 7th day of April, 1920, the plaintiff and the defendant entered into a contract referred to and mentioned in paragraph I of plaintiff's complaint concerning the purchase by the plaintiff of the defendant, of a Nash Touring Car, therein mentioned *which said contract was in writing and being the only contract ever entered into with reference to said car at any time by the plaintiff and the defendant,* is in words, letters, and figures as shown by a full, true and correct copy thereof hereto attached and made a part of this answer and marked 'Exhibit A.'"

The reply expressly admits this allegation. It becomes established, therefore, by the pleadings that Exhibit "A" was the only contract ever entered into with reference to said car at any time by the plaintiff and the defendant. On the face of the pleadings themselves the contention of the plaintiff that there was a new contract made when he returned the car is eliminated from the case.

Attention is here directed to the following language of Exhibit "A."

"The said property and the whole thereof shall remain the property of said seller and title to said property shall not vest in the buyer until the unpaid balance of the purchase price and any judgment or decree rendered thereon is wholly paid, together with taxes, assessments, insurance, costs and expenses of litigation as above mentioned, and in case the buyer makes default of payment of said amounts or any of them or interest thereon at the time or place above

specified or shall sell, transfer, assign, or remove, or attempt to encumber. dispose of or remove said property from Tillamook County, State of Oregon, without the written consent of seller, his authorized agent or assigns, or if said buyer shall become insolvent or bankrupt, or said property is attached or seized or levied upon by any creditor of the buyer, or should any condition, stipulation, or agreement herein contained be violated or not kept by the buyer, the buyer shall on demand deliver the property to the seller or his assigns in as good condition as when received, reasonable use and wear excepted, the said seller or his agent or assigns shall have the right, without notice or demand, to take immediate possession of said property and for that purpose may pursue the same wherever it may be found, and may enter the premises with or without force or process of law, and search for same and if found to take possession thereof; and in case said seller, his agent or assigns, shall re-take possession of said property, all money paid on the purchase price thereof shall at the option of the seller belong to the seller or his assigns as liquidated damages for non-fulfillment of this contract by the buyer and for loss in value of said property and for the use and rental thereof while being in the possession of the buyer and any claim or equity of the buyer in said property shall utterly cease and determine without reclamation or compensation; * *

"In case of the payment of each and every one of said amounts and interest thereon, or payment of judgment obtained thereon, within the time and according to the provisions of this agreement, time being of the essence hereof the full and absolute title to said property shall pass and vest in the buyer, it being, however, expressly understood that title shall not pass to the buyer until any and all judgments obtained hereon are paid and satisfied in full and all conditions and stipulations in this agreement are fully performed."

8. It is not averred anywhere in the pleadings that the defendant waived any of the provisions of this Exhibit "A." It empowers the seller, without notice or demand, to take immediate possession of the property should any condition, stipulation or agreement therein contained be violated or not kept by the buyer. It was avowedly agreed by the parties that time was the essence of the contract and that title should not pass to the buyer until any and all judgments obtained thereon were paid and satisfied in full and all conditions and stipulations in this agreement were fully performed. Moreover, it is said that no modification of any of the conditions of the agreement and no oral contract shall be deemed binding or operative upon either of the parties unless in writing annexed to and subscribed by the parties. It was competent for the parties to make such a contract. It takes the matter out of the operation of the rules for ascertaining the intention of buyer and seller relative to the passing of the title as expressed in that portion of the Uniform Sales Act codified in Section 8182, Or. L. The following excerpt from Section 8183, Or. L., is controlling here:

"Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer."

It is not for the court to give an effect to partial payments entirely at variance with the contract and to confer upon the plaintiff any property in the car in the face of his express stipulation that he should

have no title thereto notwithstanding such payments. The plaintiff explicitly admits that there was no other contract ever entered into about the car except Exhibit "A." The common-sense view of the writing is that the plaintiff never had any property in the car. Having no property therein he cannot maintain conversion for it. The terms of this only contract respecting the car do not give him the right to return it and compel the defendant to pay full value for it; yet that is the result of the decision of the Circuit Court in sustaining an action in trover. He was in default in his payments. He had no property in the car. In surrendering the possession to the defendant he did no more than he was obliged to do and that furnishes no consideration for his alleged contract even if he had not admitted that Exhibit "A" was the only contract.

The rule is thus stated in 13 C. J. 353:

"The promise of a person to carry out a subsisting contract with the promisee, or the performance of such contractual duty is clearly no consideration, as he is doing no more than he is obliged to do, and hence has sustained no detriment, nor has the other party to the contract obtained any benefit."

Illustrating this doctrine is *Wendover* v. *Baker,* 121 Mo. 273 (25 S. W. 918), cited in the note to that text, a case quite similar in some respects to this. There the maker of some promissory notes had given a deed of trust to secure them. Default having occurred, foreclosure was imminent. As a defense to an action subsequently instituted to collect a balance due on the notes, the maker averred that to avoid a foreclosure he had agreed with the trustee to surrender the possession of the premises in consideration of which the former was to cancel and return the notes; that he had given up possession of the land; but that

the notes had not been canceled or returned. Ruling upon the defense thus stated, Mr. Justice SHERWOOD said:

"The trustee could have entered at once for condition broken and taken possession of the premises, or brought ejectment and recovered possession. *Johnson* v. *Houston,* 47 Mo. 227; *Reddick* v. *Gressman,* 49 Mo. 389. * * As defendant had no legal right to retain possession of the premises after condition broken, hence his agreement to surrender possession was a mere nude pact constituting no valuable consideration."

See, also, on this point among our own decisions, *Nine* v. *Starr,* 8 Or. 49; *Meyer* v. *Livesley,* 56 Or. 383, 389 (107 Pac. 476, 108 Pac. 121); *Hillman* v. *Young,* 64 Or. 73 (127 Pac. 793, 129 Pac. 124); *Muir* v. *Morris,* 80 Or. 378 (154 Pac. 117, 157 Pac. 785); *Hoskins* v. *Powder Land & Irr. Co.,* 90 Or. 217 (176 Pac. 124); *Feenaughty* v. *Beall,* 91 Or. 654 (178 Pac. 600); *Bagley* v. *Bagley* (Or.), 222 Pac. 722.

True enough, if nothing else is shown, the yielding of possession of personalty is of itself a sufficient consideration to support a contract of bailment; but when the would-be bailor is already bound to surrender such possession to the supposed bailee, giving up the custody of the chattel does not constitute a consideration and the arrangement involving change of possession is *nudum pactum.* Being confessedly in default, the plaintiff here had no right to retain possession of the car. Hence his return of it to the defendant formed no consideration for the bailment so earnestly pressed in argument.

The fact that the defendant had two or more options about his course of conduct cannot alter the case. They were the defendant's options and not those of the plaintiff and the latter cannot compel an

election in the first instance as to which one his adversary shall pursue.

As said by Mr. Justice BEAN in *First National Bank of Sheridan* v. *Yocom,* 96 Or. 438 (189 Pac. 220):

"The rule adopted in this state upholds the contract of conditional sale as made by the parties themselves. While in some instances the rule may work a hardship upon the buyer, on the other hand where personal property is sold under such a contract, and on account of the leniency of the seller in enforcing payments the property has deteriorated, where the same is machinery, as in the case at bar, it might be worn out and practically worthless, the seller would receive practically no compensation therefor if the rule contended for should be applied. This would tend to render it difficult for people to obtain credit and purchase property under such conditional contracts."

Considering the complaint alone, it did not state enough to constitute a conversion but, at most, a mere trespass. Considering the whole case on the pleadings which state that the only contract was Exhibit "A" the plaintiff never had any property in the automobile involved and, having none, cannot maintain trover for its conversion. In face of the admitted allegation that Exhibit "A" was the only contract and the further fact that the plaintiff was in default on his payments on that contract, the cause might well have been decided on a motion for judgment on the pleadings for the defendant. The judgment of the Circuit Court is reversed, with directions to enter judgment of nonsuit in favor of the defendant.

REVERSED WITH DIRECTIONS. COSTS TAXED.

McBRIDE, C. J., and RAND and BROWN, JJ., concur.

COSHOW, J., Dissenting.—I regret that I am not able to agree with the opinion of the majority of the court. The complaint not having been demurred to, should be construed liberally in favor of the plaintiff. Every reasonable intendment should be invoked to sustain the complaint after verdict: *Smith* v. *National Surety Co.*, 77 Or. 17 (149 Pac. 1040); *Portland* v. *New England Casualty Co.*, 96 Or. 48 (169 Pac. 211); *Weishaar* v. *Pendleton*, 73 Or. 190 (144 Pac. 401); *Minter* v. *Minter*, 80 Or. 369 (157 Pac. 157); *Winn* v. *Taylor*, 98 Or. 556 (190 Pac. 342, 194 Pac. 857); *Duby et al.* v. *Hicks*, 105 Or. 27 (209 Pac. 156).

The provision in the contract of sale which entitled the defendant to retain the right of possession and property in the automobile was for the benefit of the defendant and could be waived by him: Section 8174, subd. 1, Or. L.; *Endicott* v. *Digerness*, 103 Or. 555 (205 Pac. 975). The demand before bringing an action in the nature of trover is not necessary whenever a conversion can be otherwise shown. As where the defendant exercises "acts of ownership; * * diversion of property from the special purposes for which it was received." 28 Cyc. 2032, quoted in the opinion of Mr. Justice BURNETT.

The complaint alleges that the automobile involved in this action was delivered to the defendant under an agreement on the part of the defendant to try to sell the same and alleges that instead of selling it, the defendant had appropriated it to his own use and had continued to use it as his own property for a period of over nine months. This conduct on the part of the defendant was not only exercising ownership, but was also a diversion of the property from the special purposes for which it was received by him.

It may well be considered that the defendant by his answer supplied the omitted allegation of demand by alleging facts establishing that a demand would have been futile. The law does not require a futile or vain thing to be done: *Turner* v. *Corbett,* 9 Or. 79; *Perrera* v. *Parke,* 19 Or. 141 (23 Pac. 883); *Catlin* v. *Jones,* 48 Or. 158 (85 Pac. 515); *Brown* v. *Lewis,* 50 Or. 358 (92 Pac. 1058); *Brown* v. *Truax,* 58 Or. 572 (115 Pac. 597); *Treadgold* v. *Willard,* 81 Or. 658 (160 Pac. 803); *Siverson* v. *Clanton,* 88 Or. 261 (170 Pac. 933, 171 Pac. 1051); *McLemore* v. *Western Union Tel. Co.,* 88 Or. 228 (171 Pac. 390, 1049); *Hornefius* v. *Wilkinson,* 51 Or. 45 (93 Pac. 474); *Utah-Idaho Sugar Co.* v. *Lewis,* 95 Or. 224 (187 Pac. 590); *American Nat. Bank* v. *Kerley,* 109 Or. 155, 206 (220 Pac. 116); *Overturff* v. *Carrell,* 109 Or. 326 (219 Pac. 1081).

The late Mr. Justice McCOURT wrote an opinion, which in part is adopted and is as follows:

"At the argument had upon rehearing of the cause, counsel for the defendant made the further point that inasmuch as it appears from the complaint that the defendant acquired possession of the property rightfully, it was essential to a recovery by plaintiff, that he allege and prove a demand for the property, and the refusal of the defendant to deliver the same in response to such demand.

"As above pointed out, the complaint expressly alleged that the defendant, immediately following the delivery of the property to him, commenced to use the same as his own, and continuously thereafter for over nine months prior to the commencement of the action, continued to so use the property, and to exercise dominion over it, inconsistent with the right of plaintiff, and in direct conflict with the terms of the contract of bailment under which he obtained posses-

sion of the automobile. The purpose of alleging and proving a demand by the plaintiff and a refusal by the defendant, to deliver the property, involved in cases like the instant case, is to show a conversion and it is the generally accepted rule that such demand and refusal are unnecessary if the acts with which the defendant is charged in the complaint amount to a conversion regardless of whether or not a demand is made: 26 R. C. L. 1122. As said by Mr. Justice HARRIS in *Daniel* v. *Foster & Kleiser Co.,* 95 Or. 502 (187 Pac. 627):

" 'Where a conversion has actually occurred there is no necessity for alleging and proving a demand and refusal.'

"The facts set forth in the complaint charged a conversion, without an averment of demand and refusal.

"At the trial the contest between the parties was confined to a determination of the conditions upon which the plaintiff surrendered possession of the automobile to defendant on July 20, 1920. All the other material facts relating to the respective rights of the parties were admitted. Plaintiff testified to the effect that, a few days prior to July 20, 1920, he had taken the automobile to defendant's garage and left it there for the purpose of having a spring repaired. Plaintiff was out of work at that time and he concluded that he likely would be unable to pay the balance due upon the purchase price of the automobile, and accordingly he returned to defendant's place of business on July 20th, and inquired of defendant, whether he could sell the automobile for plaintiff, and at the same time asked defendant what he estimated the automobile would sell for. Defendant replied that the automobile ought to sell for $1,650. Plaintiff then proposed that defendant take the automobile

and place it upon display in defendant's salesroom, and sell it for $1,650, or the best price he could secure for it, and apply the proceeds of the sale, so far as necessary, in satisfaction of the balance of the purchase price due upon the automobile, and pay the remainder to plaintiff. In answer to plaintiff's proposal defendant stated that he would be willing to take the automobile upon the terms mentioned by plaintiff, and endeavor to sell the same, provided the bank with which he had deposited the conditional sales contract would consent to the arrangement suggested by plaintiff. Defendant then went to the bank for the avowed purpose of consulting the officers of the bank relative to the matter. In a short time defendant returned and stated that he would undertake to make the sale on the terms proposed by plaintiff, and the latter, relying upon the agreement thus made, thereupon left the automobile with defendant and relinquished his right to possession of the same. At this time plaintiff had failed to make the installment payment upon the purchase price that had fallen due in each of the months of May, June, and July; but defendant had not made any demand for possession of the automobile or taken any action to terminate or forfeit plaintiff's rights therein.

"Defendant, in refutation of plaintiff's evidence, testified in effect that when plaintiff came to defendant's place of business on July 20th, defendant called the attention of plaintiff to his default in the payment of three overdue installments upon the price of the automobile, and in response thereto plaintiff declared that he was unable to make the payments; that thereupon, pursuant to the option given him by the conditional sales contract between them, defendant required plaintiff to leave the automobile in the possession of defendant; that plaintiff acquiesced

112 Or.—30

in the demand of the defendant, and then and there relinquished all his right to the automobile; that thereupon defendant voluntarily informed plaintiff that he would endeavor to sell the automobile, and if he succeeded in making a sale for more than the balance of the unpaid purchase price he would pay the excess to plaintiff; he further stated that he had tried to sell the automobile, but had been unable to do so. Defendant testified further that having retaken possession of the property, he elected to credit plaintiff with all sums theretofore paid as rental and for use of the automobile, and for liquidated damages, and thereby extinguish plaintiff's property therein, under the option, so to do, given defendant by the terms of the contract.

"Defendant admitted upon the trial that after July 20th, he did not recognize any right or title to the automobile in plaintiff and that immediately after that date he commenced to use the automobile and that continuously thereafter up to the time of the trial, he had used it and treated it as his own.

"It is therefore clear that the opposing claims of the parties were each supported by material evidence The weight and probative force of that evidence was for the jury. Manifestly, the evidence in support of plaintiff's case was not subject to the objection urged by the defendant in his motion for nonsuit, to wit; that it failed to show any consideration for the agreement relied upon by the plaintiff.

"It follows that the court did not err in denying defendant's motion for nonsuit, unless a further objection that is presented by the record required a contrary ruling. The objection referred to, raises the question whether the vendee entitled to possession of personal property under a conditional sales

contract, reserving title in the vendor until the price is paid, has any property in the subject matter of the sale after default in making the deferred payments has occurred, and before a forfeiture has been declared by the vendor, that he can assign or transfer, or in respect to which he can contract particularly with the vendor.

"The rule is firmly established, that before he has made default in meeting the deferred payments on the purchase price, the vendee in such a contract, who has paid part of the purchase price, has a special property in the subject matter of the sale and an interest therein which is capable of transfer, so as to pass to his transferee his inchoate interest, and enable the latter to perform the condition and perfect his title: 24 R. C. L. 498; *Christenson* v. *Nelson,* 38 Or. 473, 477 (63 Pac. 648); *Pelton Water Wheel Co.* v. *Oregon Iron Co.,* 87 Or. 248, 253 (170 Pac. 317); *Dame* v. *Hansen & Co.,* 212 Mass. 124 (98 N. E. 589, Ann. Cas. 1913C, 329, L. R. A. (N. S.) 873, and cases digested in note appended thereto).

"It is equally well settled that the property vested in such a vendee before default upon his part entitles him to sue, not only third persons, but the vendor as well, for conversion or injury to the property, and in such case, he may, as a general rule, if the wrongdoer is a third person, recover the full value of the property, and if the wrongdoer is the vendor, he may recover the value of the property, less the unpaid portion of the purchase price: 24 R. C. L. 496; Williston on Sales (2 ed.), § 383; *Reinkey* v. *Findley Elec. Co.,* 147 Minn. 161 (180 N. W. 238); *Carwell* v. *Weaver,* 54 Cal. App. 734 (202 Pac. 897); *Clark* v. *Clement,* 75 Vt. 417 (56 Atl. 94); *Roberson* v. *Withers,* (Tex. Civ.), 152 S. W. 1160; *Roper* v. *Faber,* 8 Ga. App. 178 (68 S. E. 883).

"Provisions in a conditional sales contract that the vendor may, on default of the vendee, declare the contract void and take possession of the property, are inserted for the purpose of providing security to the vendor for the payment of the purchase price: Williston on Sales (2 ed.), § 579. And where such provisions are not self-executing but in terms require, as here, that as a condition precedent to their exercise, the vendor shall make known his election to retake the property and forfeit the rights of the vendee in the subject matter of the contract by notice or demand, the mere omission of the vendee to pay the price or perform other acts agreed upon at the times stipulated, does not operate as a forfeiture of all his rights. Even after' maturity, and before the vendor has exercised his right to declare a forfeiture, the vendee may still pay the balance of the purchase price or perform the other stipulated acts and retain the property which he received under the contract: 35 Cyc. 700, 701; Mechem on Sales, § 606; *Sunny South Lbr. Co.* v. *Neimeyer Lbr. Co.,* 63 Ark. 268, 276 (38 S. W. 902); *Leaf* v. *Reynolds,* 34 Idaho, 643 (203 Pac. 458); *Pease* v. *Teller Corp.,* 22 Idaho, 807, 817 (128 Pac. 981); *Wheeler & Wilson Mfg. Co.* v. *Teetzloff,* 53 Wis. 211 (10 N. W. 155); *Vaughn* v. *McFayden,* 110 Mich. 234 (68 N. W. 135).

"The remedies afforded by such provisions are given for the benefit of the vendor and he may waive them. *Epplatt* v. *Empire Inv. Co., Inc.,* 99 Or. 533, 541 (194 Pac. 461, 700), involved a contract containing a forfeiture provision which might be exercised at the option of the vendor. Mr. Justice HARRIS, speaking for the court in that case, said:

"'The contract does not by force of its own terms automatically work a forfeiture upon failure to pay an installment, but it merely gives the defendant the

right to elect that it will declare a forfeiture; and hence, in order to have produced a forfeiture, the defendant must have exercised its right by electing to declare a forfeiture. The right to declare a forfeiture can, when arising out of contracts like the one presented here, be exercised either at or after the maturity of any installment; but, whether exercised at or after maturity, the right does not exist and cannot be lawfully exercised unless reasonable notice has been previously given * * . Since contracts like the one here are not self-executing, the law by implication introduces into such contracts a provision that the right of forfeiture shall be exercised only after first giving notice for a reasonable period of time, or rather, speaking figuratively, the invisible and omnipresent hand of the law writes such a provision into the contract; and, therefore, the right to forfeit cannot be fully exercised unless: (1) the vendor gives reasonable notice; and (2) the purchaser failed to pay within the time fixed by the notice.'

"In Mechem on Sales, Section 609, the Author says:

" 'The law has no interests of its own to subserve in insisting upon forfeitures or the other results of default. The remedies it gives are for the benefit of the vendor, and he may waive them if he will. He may do this, moreover, either expressly or by implication, and as the results of default more often work hardships to the buyer than to the seller, the law looks with complacence at least upon those acts of the vendor which may fairly be construed as indicative of his intention not to insist upon a forfeiture of the buyer's rights. If, therefore, the seller, notwithstanding the default, does not avail himself of his appropriate remedy, but so acts as to reasonably warrant the inference that he regards the buyer's rights as still subsisting, he will be deemed to have waived the default, and he will not be at liberty to declare a forfeiture until he has in some way put the buyer, whom he has thus misled, in the attitude of a fresh default.'

"In the instant case, it is undisputed that an installment upon the purchase price of the automobile, became due upon the seventh day of each of the months of May, June and July, 1920; that plaintiff made default in the payment of each of the installments mentioned; that defendant did not, prior to July 20, 1920, demand possession of the automobile or declare a forfeiture upon account of any such default or otherwise, and in the interval plaintiff continued in the use and possession of the automobile as though no default had occurred.

"In that situation, no declaration of forfeiture having been made by defendant, plaintiff was entitled to the possession of the automobile. *Burdick* v. *Tum-a-Lum Lbr. Co.,* 91 Or. 417, 423 (179 Pac. 245). And it is established by the authorities above cited that he was also entitled to tender and pay to the defendant the balance due upon the contract and preserve his rights in the property as effectively as though no default had occurred. And it may be that by offering to pay the amount of the overdue installments, prior to any such declaration of forfeiture, he would have become fully reinstated in his contract rights, but whether that would be so or not, we need not decide.

"Obviously the rights and property above described and belonging to plaintiff, were the subject of contract between him and defendant. Clearly an agreement by the latter to pay a stipulated price for the relinquishment of those rights would have been valid and enforceable. So the agreement set up in plaintiff's complaint, whereby defendant undertook to dispose of plaintiff's rights in the property as well as his own, followed by surrender of possession of the automobile to defendant for the purpose of promoting the contemplated sale, constituted a contract which

the parties under the circumstances were competent to make, and one which was supported by a sufficient consideration.

"If as a fact, and that was a question for the jury, the agreement mentioned was entered into as alleged by plaintiff, it created a situation inconsistent with the termination of plaintiff's rights involved therein, and had the effect of suspending defendant's right to declare a forfeiture until the later agreement was terminated.

"As above stated, the question, whether the agreement relied upon by the plaintiff was entered into by the parties, was one for the jury. The evidence submitted to establish that agreement as well as the evidence offered to show that no such agreement was made, was submitted to the jury under proper instruction and its determination in respect thereto is binding, both upon the parties and upon this court."

In regard to the effect of the admission by the plaintiff in his reply that the written contract for sale of the automobile set out as an exhibit to the answer was "the only contract ever entered into with reference to said car at any time by the plaintiff and the defendant," it is sufficient to say that that question was not raised or submitted in the Circuit Court or in this court. Appellant relied on two alleged errors, and only two, namely: That the complaint did not state facts, and that there was not any evidence before the court sufficient to go to the jury tending to prove the agreement relied upon by the plaintiff. The admission in the reply not having been taken advantage of by proper motion should be considered waived. Only the question that the complaint does not state facts, or the court is without jurisdiction, can be raised in this court for the first time. This court should confine its decisions to the

questions raised by the appeal, excepting only the two instances where the sufficiency of the complaint and the jurisdiction of the court are challenged. The case was not disposed of by motion for judgment on the pleadings. The Circuit Court's attention was not directed to the admission. Counsel for appellant did not raise it in this court. Questions not raised in the lower court will not be reviewed: *Stoddard Lumber Co.* v. *Oregon-Wash. R. & N. Co.,* 84 Or. 399 (165 Pac. 363, 4 A. L. R. 1275); *Marks* v. *First Nat. Bank,* 84 Or. 601 (165 Pac. 673).

One other alleged error than the two mentioned above was assigned, but not insisted on in this court and is not material or relevant to the matters discussed in this opinion.

The judgment should be affirmed.

Mr. Justice BEAN concurs in this dissent.

---

Motion to dismiss appeal allowed November 12, 1924.